17-1359-cv
Duplan v. City of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: December 12, 2017  Decided: April 30, 2018)

Docket No. 17-1359-cv

LOUIS M. DUPLAN,

*Plaintiff-Appellant*,

— v. —

THE CITY OF NEW YORK,

*Defendant-Appellee*.

B e f o r e :

LYNCH and LOHIER, *Circuit Judges*, and REISS, *District Judge.*[*]

Louis Duplan appeals from a judgment of the United States District Court for the Eastern District of New York (Roslynn R. Mauskopf, *J.*), dismissing his claims that his employer, the City of New York ("the City"), retaliated against

---

[*] Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

him after he filed a discrimination complaint, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. With respect to his § 1981 claims, we conclude that 42 U.S.C. § 1983 provides the sole cause of action against state actors alleged to have violated § 1981. Construing Duplan's claims as § 1983 claims, he has failed to allege a policy or custom of misconduct, as is necessary to assert liability against a municipality. With respect to his Title VII claims, we conclude that Duplan cannot avoid that statute's exhaustion requirement by asserting retaliation for filing a claim of discrimination that he failed to pursue. As to those claims that Duplan properly exhausted, however, Duplan has adequately alleged retaliation following both of his EEOC complaints. Accordingly, the district court's dismissal of those claims is VACATED. In all other respects, the judgment of the district court is AFFIRMED.

---

KATHY A. POLIAS, Brooklyn, NY, *for Plaintiff-Appellant*.

JONATHAN A. POPOLOW (Jane L. Gordon, Dona B. Morris, *on the brief*), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee.*

---

GERARD E. LYNCH, *Circuit Judge*:

Louis Duplan appeals from a judgment of the United States District Court for the Eastern District of New York (Roslynn R. Mauskopf, *J.*), dismissing his claim that his employer, the City of New York ("the City"), retaliated against him after he filed a discrimination complaint, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. With respect to his claims under § 1981, we conclude that 42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981. Construing

2

Duplan's claims as § 1983 claims, we further conclude that he has failed to allege a municipal policy or custom of misconduct, as is necessary to assert liability against a municipality. Accordingly, we find no error in the district court's dismissal of Duplan's § 1981 claims.

With respect to his Title VII claims, we conclude that Duplan cannot avoid that statute's exhaustion requirement by asserting retaliation for filing a claim of discriminatory treatment that he failed to pursue. As to those claims properly exhausted by Duplan's second complaint to the Equal Employment Opportunity Commission ("EEOC"), however, Duplan has adequately alleged retaliation for filing his earlier EEOC complaint. Duplan has also adequately alleged that he suffered an adverse employment action in retaliation for filing his second EEOC complaint. Finally, we determine that Duplan has failed to allege sufficiently severe or pervasive conduct to make out a hostile work environment claim. Accordingly, the district court's dismissal of Duplan's properly exhausted Title VII retaliation claims is VACATED, and in all other respects the judgment of the district court is AFFIRMED.

**BACKGROUND**

### I.     Factual Background

Because a court that rules on a defendant's motion to dismiss a complaint "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal quotation marks omitted), we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015), and construing any ambiguities "in the light most favorable to upholding the plaintiff's claim," *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Louis Duplan, a gay, black man from Haiti, was, at all relevant times, an employee of the City of New York in the Administration Unit of the Bureau of HIV/AIDS Prevention and Control, which is a subdivision of the City's Department of Health and Mental Hygiene (the "Department"). From 2005 through 2011, Duplan held the position of Director of Operations, in which role he had numerous managerial and supervisory responsibilities. In 2011, Duplan's direct supervisor was Randolph Rajpersaud, the Bureau's Director of Administration. In that role, Rajpersaud made derogatory comments about black

4

people, gay people, and Haitians, and had on two occasions given preferential treatment to white women. In May 2011, Rajpersaud targeted Duplan personally by removing several of his substantive and managerial responsibilities.

After Rajpersaud was promoted to Assistant Commissioner of the Department, in June 2011, Duplan applied for a promotion to the vacated post of Director of Administration. Rajpersaud served on the hiring committee for his replacement.  Duplan was not selected for the job; instead, in July, the committee chose a white, straight, American-born woman whom Duplan alleges was less qualified for the position. That selection, coupled with Rajpersaud's participation in the process, led Duplan to believe that he had been denied the position on the basis of his race, national origin, and sexual orientation.

In July and August 2011, Duplan filed complaints with the City, the EEOC, and the New York State Division of Human Rights ("NYSDHR"), asserting that he had been denied the promotion for discriminatory reasons and, in retaliation for complaining about that discrimination, had then been effectively demoted through the diminution of his substantive responsibilities. For the remainder of that year, Rajpersaud and other unspecified City officials engaged in a retaliatory campaign against Duplan. Under the pretext of a "reorganization," Duplan was

deliberately deprived of additional responsibilities as well as all of his remaining subordinates. His sole remaining responsibility involved time management tasks, which he voluntarily expanded in order to stay busy. Duplan also learned that, at some point in late 2011, Rajpersaud had unsuccessfully attempted to reduce his salary several times. Duplan received a right-to-sue letter from the EEOC on July 30, 2012, but never filed a civil action.

Between 2011 and 2014, Duplan alleges, each of his successive supervisors continued to ostracize and ignore him. Duplan also applied for several more managerial positions for which he was qualified, but he was not interviewed or seriously considered. In September 2014, Duplan emailed several supervisory employees in the Department to complain about the retaliation he believed he had experienced following his 2011 complaint, and on October 23, 2014, he filed a complaint regarding that alleged retaliation with the EEOC and the NYSDHR.

In his complaint, Duplan charged that, in the 300 days prior to filing his second EEOC complaint,[1] the following discrete acts of retaliation occurred: First, at some point in 2014, John Rojas, his then-supervisor, denied him a merit raise

---

[1] As discussed further below, we conclude that Duplan has only properly exhausted claims arising within 300 days of his second EEOC complaint. Accordingly, our discussion of the facts focuses on that time-period.

that was given to the majority of his coworkers. Second, Duplan was suspended for ten business days without pay in September and October 2014 after another employee made an allegedly false sexual harassment claim against him, even though the complainant had sought only an informal conference to resolve the issue. Third, in September 2014, the City created a position that included all of the responsibilities Duplan had held before he began making complaints in 2011 (and which had subsequently been taken from him, allegedly in retaliation for those complaints), but did not hire him for that role. When Duplan asked Rojas why his responsibilities had not simply been restored, Rojas responded that the matter was "out of his control," despite the fact that Rojas was directly involved in hiring for the new position. App. at 13, ¶ 18(a). That response discouraged Duplan from applying for the position. Fourth, Duplan's application for the Director of Administration position was denied again in September 2014.

Duplan alleges that he was subjected to two additional instances of retaliation as a result of his 2014 complaint. First, in November 2014 and January 2015, Duplan was assigned additional duties that were "well below" his civil service and functional titles, including removing boxes, fulfilling maintenance requests, acting as Fire Warden, and assigning seats to new employees. App. at

17. Second, in September 2015, Duplan lost access to the time management system, thus depriving him of the sole task remaining from his pre-2011 responsibilities and leaving him with only work that is "well below [his] civil service title as well as his functional title." App. at 17.

## II.    Procedural History

Duplan received a right-to-sue letter in June 2015, and on July 10, 2015, he brought this action, asserting claims for discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981, and for retaliation and hostile work environment under Title VII. The district court granted the City's motion to dismiss all of Duplan's claims pursuant to Rule 12(b)(6) .

First, the court held that Duplan's § 1981 claims failed because § 1983 provided the sole federal remedy for discrimination perpetuated by state actors. It also noted that to the extent the claims could be construed as § 1983 claims, they would either be untimely under § 1983's three-year statute of limitations, or fail for the same substantive reasons as the Title VII claims.

Second, the court concluded that Duplan was time-barred from alleging retaliation based on conduct that occurred prior to December 27, 2013 (300 days before the 2014 EEOC complaint). The court held that the 2014 EEOC charge was

8

untimely as to any conduct occurring before that date. It also rejected Duplan's contention that those claims could be deemed exhausted by his 2011 EEOC filing, because Duplan had failed to file suit within 90 days after receiving a right-to-sue letter based on the earlier complaint.

Third, evaluating the remaining allegations, the court held that Duplan had failed to demonstrate a sufficient causal connection between the conduct included in the 300-day look-back period prior to the 2014 EEOC complaint and any retaliatory animus arising from the 2011 complaint.

Fourth, the court held that Duplan had not adequately alleged retaliation following his 2014 complaint because the conduct about which he complained did not amount to an adverse employment action. And finally, it ruled that Duplan had not adequately alleged a hostile work environment claim because the course of conduct alleged was not sufficiently severe or pervasive.

Duplan timely appealed, challenging each of those holdings.

## DISCUSSION

A district court's grant of a motion to dismiss is reviewed *de novo*. *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010).

9

## I.    Section 1981 Claims

Duplan seeks to assert claims against the City under 42 U.S.C. § 1981,

rather than under § 1983, because some § 1981 claims have a four-year statute of

limitations, *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004),

whereas the limitations period for § 1983 claims is borrowed from state law,

which, in the case of New York, confers only a three-year period, *Shomo v. City of*

*New York*, 579 F.3d 176, 181 (2d Cir. 2009). In *Jett v. Dallas Independent School*

*District*, 491 U.S. 701 (1989), however, the Supreme Court held that "the express

cause of action for damages created by § 1983 constitutes the *exclusive federal*

*remedy* for violation of the rights guaranteed in § 1981 by state governmental

units." *Id.* at 733 (emphasis added). Duplan contends that *Jett* was implicitly

overruled by a 1991 amendment to the Civil Rights Act. Although our precedents

have not been entirely clear on this issue,[1] we now join the strong consensus of

---

[1] A few years after the 1991 amendment, we observed that there was some "ambiguity" about whether § 1981 now provided a private right of action against state actors, but did not resolve the issue. *Anderson v. Conboy*, 156 F.3d 167, 178 n.19 (2d Cir. 1998); *see also Howard v. City of New York*, 602 F. App'x 545, 546 n.1 (2d Cir. 2015) (citing *Anderson*, and again avoiding the issue). In subsequent opinions and summary orders, we have occasionally cited *Jett* as if it remained good law. *See, e.g., Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010). However, those rulings did not discuss the arguments Duplan raises here, and district courts in this Circuit

our sister Circuits in rejecting Duplan's argument and reaffirming *Jett*'s ongoing viability.

Duplan's argument hinges on a new reference to state actors added to § 1981(c) by the 1991 amendments, which reads as follows: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Legislative history indicates that the addition "was intended to codify *Runyon v. McCrary*, 427 U.S. 160 (1976), in which the Supreme Court held that § 1981 prohibited intentional racial discrimination in private, as well as public, contracting." *McGovern v. City of Philadelphia*, 554 F.3d 114, 120 (3d Cir. 2009), citing H.R. Rep No. 102-40(II), at 37 (1991) (internal citation modified).

In *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), the Ninth Circuit concluded that, because the amended language of § 1981(c) "afford[ed] *identical protection* against 'impairment by nongovernmental discrimination' and 'impairment under color of State law,'"

---

have generally continued to view the issue as undecided. *See, e.g., Smith v. Metro. Dist. Comm'n*, 105 F. Supp. 3d 185, 188 n.6 (D. Conn. 2015); *Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008). Accordingly, we take this opportunity to clarify the law on this issue.

when Congress created an implied right of action against private actors, it must also have created an identical right of action against state actors under the same provision. *Id.* at 1213 (emphasis in original).

Every subsequent Circuit to consider the issue, however, has declined to follow *Federation*'s reasoning.[2] As explained by Judge Arterton in her thorough and well-reasoned discussion of this case law in *Smith v. Metropolitan District Commission*, 105 F. Supp. 3d 185 (D. Conn. 2015), those courts have coalesced around three cogent points. First, there is no indication in the legislative history that Congress intended the 1991 amendments to overrule *Jett*. To the contrary, the legislative history expressly invokes and either codifies or overrules other Supreme Court cases, but makes no reference to *Jett*, a high-profile opinion issued less than two years before the amendments were enacted.[3] Second, there is

---

[2] *See Buntin v. City of Boston*, 857 F.3d 69, 72–75 (1st Cir. 2017); *Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014); *Campbell v. Forest Preserve Dist. of Cook Cty.*, 752 F.3d 665, 670–71 (7th Cir. 2014); *McGovern*, 554 F.3d at 120–21 (3d Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008); *Bolden v. City of Topeka*, 441 F.3d 1129, 1136–37 (10th Cir. 2006); *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463–64 (5th Cir. 2001); *Butts v. Cty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 & n.1 (4th Cir. 1995).

[3] *See, e.g.*, *Buntin*, 857 F.3d at 75 ("[C]onspicuously, *Jett* is not cited or discussed anywhere in the 1991 Act's legislative history. That silence is striking in light of the numerous other Court decisions mentioned explicitly.") (internal citation omitted); *Brown*, 774 F.3d at 1021 ("The fact that *Jett* appears nowhere in the Act

a difference between providing identical *rights* and providing identical *remedies*.[4]

Because § 1983 already provides a remedy against state actors, there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy.[5] Third, since *Federation* was decided, the Supreme Court has increasingly discouraged the recognition of implied rights of actions without a clear indication of congressional intent.[6]

---

or the committee reports that preceded it belies any argument that the Congress intended to repeal the decision.") (internal quotation marks omitted); *McGovern*, 554 F.3d at 120 ("Nothing in the 1991 amendments or its legislative history evinces Congress's desire to alter the Supreme Court's conclusion in *Jett*, nor was *Jett* even mentioned[.]").

[4] *See, e.g., Brown*, 774 F.3d at 1021 (noting that the language of § 1981(c) "still only addresses substantive *rights* and section 1983 remains the only provision to expressly create a *remedy* against persons acting under color of state law") (internal quotation marks and citation omitted) (emphasis in original); *McGovern*, 554 F.3d at 119 ("The fact that § 1981(c) places an individual's *rights* on equal footing against discrimination by private and public actors does not necessarily imply the existence of an equal *remedy* against all defendants.") (emphasis in original).

[5] *See, e.g., Campbell*, 752 F.3d at 671 ("The fact that Congress has created a specific remedy against state actors under § 1983 still counsels against inferring a remedy against them under § 1981, even after the Civil Rights Act of 1991."); *McGovern*, 554 F.3d at 119 ("Congress has already provided an effective means of vindicating a plaintiff's rights [against a state actor] elsewhere in federal law.").

[6] *See, e.g., McGovern*, 554 F.3d at 119 (discussing, *inter alia, Alexander v. Sandoval*, 532 U.S. 275 (2001), which makes Congressional intent the "sole touchstone" of the inquiry into whether a private right of action is implied in a statute).

We find that reasoning persuasive, and therefore join nine of our sister Circuits in concluding that § 1981 does not provide a separate private right of action against state actors. Accordingly, Duplan's claims against the City under that provision were properly dismissed. Moreover, if we construe Duplan's § 1981 claims as brought under § 1983, they still fail because Duplan has failed to allege that the "challenged acts were performed pursuant to a municipal policy or custom," as required to maintain a § 1983 action against a municipality. *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004), citing *Jett*, 491 U.S. at 733–36; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978). Accordingly, the district court's judgment is affirmed to the extent that it dismissed Duplan's claims based on § 1981.

## II.    Title VII Claims

Duplan asserts Title VII claims on the basis of the discrete instances of retaliation he suffered for filing his 2011 and 2014 EEOC complaints, and further asserts that he was subjected to a generally hostile work environment in retaliation for making those complaints. We discuss each of those claims in turn.

14

A. *Retaliation Following the 2011 Complaint*

In order to evaluate whether Duplan has alleged viable claims for retaliation following his 2011 complaint, we must first determine whether he has timely alleged and properly exhausted those claims. Concluding that we may address only those instances of retaliation included in his 2014 EEOC complaint, we then consider whether those allegations are sufficient to make out a *prima facie* case of retaliation at the pleading stage.

1. *Exhaustion and Timeliness*

Before an aggrieved party can assert a Title VII claim in federal court, he is generally required to exhaust the administrative remedies provided by the statute. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). That is, a Title VII plaintiff generally must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1),[7] and must then file an action in federal court

_____

[7] The three-hundred-day look-back period is in fact an extended period that Title VII affords to plaintiffs complaining about conduct that occurred in a state with its own antidiscrimination enforcement mechanisms, which includes New York. As we explained more fully in *Ford v. Bernard Fineson Development Center*, 81 F.3d 304 (2d Cir. 1996):

> Discrimination claims under Title VII and the ADEA
> must ordinarily be "filed" with the EEOC within 180

15

within 90 days of receiving a right-to-sue letter from the agency, *id.*

§ 2000e-5(f)(1). The district court, straightforwardly applying those rules,

determined that because Duplan had brought a federal suit within 90 days of

receiving a right-to-sue letter for his 2014 EEOC complaint, but had not done so

after receiving such a letter for his 2011 EEOC complaint, only conduct occurring

300 days before he filed the 2014 complaint with the agency was properly

exhausted.

Duplan argues, however, that his 2011 EEOC charge should be deemed to

have exhausted any subsequent claims of retaliation for filing that charge. We

have, indeed, long recognized that in certain circumstances it may be unfair,

---

> days of the date on which the "alleged unlawful
> employment practice occurred." 42 USC § 2000e–5(e)(1);
> *see* 29 USC § 626(d)(1). However, if the alleged
> discrimination took place in a state or locality that has
> its own antidiscrimination laws and an agency to
> enforce those laws, then the time period for "fil[ing]"
> claims with the EEOC is extended to 300 days. 42 U.S.C.
> § 2000e–5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b). In this
> case, the discrimination alleged by [the plaintiff] took
> place in New York, which has both antidiscrimination
> laws and an antidiscrimination agency. The 300–day
> limit therefore applies.

*Id.* at 307.

inefficient, or contrary to the purposes of the statute to require a party to separately re-exhaust new violations that are "reasonably related"to the initial claim. *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072. Relevant to the present case, if a plaintiff has already filed an EEOC charge, we have been willing to assume that the exhaustion requirement is also met for a subsequent claim "alleging retaliation by an employer against an employee for filing an EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). Duplan seizes on that language to argue that he was not required to exhaust any claims of retaliation for filing his 2011 EEOC complaint (notwithstanding the fact that he actually did attempt to do so in his 2014 EEOC complaint). But because the conduct about which Duplan complains occurred after the conclusion of the agency's investigation and because Duplan did not file suit within 90 days of receiving a right-to-sue letter on his 2011 complaint, accepting Duplan's argument would be a significant and unwieldy extension of our existing precedent, and one we now reject.

In the paradigmatic case for which the "reasonably related" doctrine was adopted, retaliation occurs while the EEOC charge is still pending before the

17

agency. It is well established that the plaintiff may then sue in federal court on both the adverse actions that gave the impetus for the initial EEOC charge and the retaliation that occurred thereafter, even though no separate or amended EEOC charge encompassing the subsequent retaliation was ever filed. *See Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 410–11 (2d Cir. 1991). That result stems from several considerations. Most straightforwardly, the ongoing EEOC investigation on the first charge would be expected to uncover and address any related retaliation. *See Butts*, 990 F.2d at 1402. Forcing the parties into two concurrent agency proceedings is also unlikely to produce "the princip[al] benefits of EEOC involvement, [namely,] mediation of claims and conciliation." *Id.* Moreover, "requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." *Id.* In addition, some plaintiffs might be effectively deterred from filing additional EEOC complaints if they suffered severe retaliation as a result of their initial claim. *Terry*, 336 F.3d at 151.

But we have also applied the "reasonably related" doctrine to retaliation that occurs after the EEOC investigation is complete, even though the rationale

18

that the retaliation likely was or should have been encompassed by the EEOC investigation is not available in such cases. For instance, in *Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 1993), we observed that so long as the retaliation at issue occurred after the filing of the initial EEOC complaint, there was "no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related" to the initial claim for exhaustion purposes. *Id.* at 1209. In *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683 (2d Cir. 2001), a more extreme case, the "reasonably related" act of retaliation occurred three years after the plaintiff's initial right-to-sue letter issued. *See id.* at 684–85; *see also Shah v. N.Y. Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) (applying "reasonably related" doctrine to retaliatory acts occurring one and four years after initial agency complaint).

Duplan attempts to analogize his situation to the facts of *Legnani*. There is, however, a crucial distinction between that case and the present facts: in *Legnani*, the "related" retaliation occurred while a *timely federal lawsuit* based on the underlying discrimination charge was still pending. *See* 274 F.3d at 685. Thus, the ongoing federal case stood in the same position as administrative proceedings for the purpose of efficiency and other policy arguments outlined above. In other

words, Legnani had acted in a timely manner to bring her properly exhausted claims to court, and the district court in that case erred by failing to recognize that the efficiency of resolving all of the plaintiff's related claims in the single, already-pending lawsuit justified a departure from rigid adherence to the statutory exhaustion requirement.[8]

Duplan, however, has long since abandoned his initial claim of discrimination, because he failed to timely bring a lawsuit on that claim after receiving a right-to-sue letter in 2012. In such a case, the underlying discrimination claims that were the basis of the original EEOC charge are time-barred. No administrative or judicial proceeding is still pending, and the employee who suffers further discrimination or retaliation, like any other employee with a potential Title VII claims, therefore remains subject to that statute's administrative exhaustion requirement. There is no reason to expand the judicially created waiver of the statutory exhaustion requirement to permit

---

[8] Duplan also suggests that his circumstance is analogous to the facts in *Shah*. It is somewhat unclear whether the "related" retaliation at issue in *Shah* occurred while the plaintiff's EEOC investigation was on-going, or just after his federal case was filed, but in any event, all of the conduct took place while Shah was in the course of diligently pursuing his underlying, related claims. *See* 168 F.3d at 612, 614.

unexhausted retaliation claims to be held open indefinitely into the future, or litigated without going through a new administrative process, simply because, if the plaintiff *had* timely filed suit, policy considerations would have weighed in favor of waiving the exhaustion requirement so that the retaliation claim could have been joined with that hypothetical lawsuit.

Although we have not previously had occasion to make clear that "reasonably related" retaliation claims are excused from the exhaustion requirement *only* if they arise during the pendency of an EEOC investigation *or* a timely filed federal case, that outcome is consistent with Title VII's statutory scheme and our existing case law. There is no indication in the text or legislative history of Title VII that Congress intended to sanction a broad category of unexhausted retaliation claims.

Notably, moreover, Title VII provides no alternative statute of limitations that would apply to such delayed retaliation claims. As noted above, Title VII claims ordinarily must be filed 90 days after the plaintiff receives a right-to-sue letter from the agency. But if an employer waits more than 90 days to retaliate against an employee for filing an EEOC complaint, the retaliation claim *cannot* be brought within the statutory window. If a timely filed federal case is underway,

21

then the later instances of retaliation can be added to an amended complaint and investigated using discovery in much the same way that they could have been addressed during an ongoing EEOC investigation. But if there is no such case, and we nevertheless suspend the exhaustion requirement as Duplan requests, we would essentially be doing away with the statute of limitations requirement for this class of claims.

To avoid creating a liability unbounded by any temporal limitation, Duplan proposes that we treat "reasonably related" retaliation claims like other federal causes of action for which there is no specified statute of limitations. He suggests that we borrow an analogous state statute of limitations for such claims, which, in the present case, would yield a three-year window. We see no reason to strain so hard to find a palatable way to suspend Title VII's requirements for an entire category of claims. Exhaustion is "an essential element of Title VII's statutory scheme." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted). The "reasonably related" doctrine is a limited, judge-made exception to that requirement, created to accommodate

practical concerns that are not present where a plaintiff failed to file a timely suit on his original claim.[9]

In sum, retaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge. But there is no compelling reason—efficiency-related or otherwise—to grant a similar exception to a plaintiff like Duplan, who deliberately abandoned his underlying claim of discrimination by failing to file a timely suit on those claims. Accordingly, we reject Duplan's argument that we should consider the alleged acts of retaliation that were not timely presented to the EEOC after he

---

[9] This outcome is also consistent with the reasoning behind our recent opinion in *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d. 52 (2d Cir. 2018), in which we held that *res judicata* barred a plaintiff from bringing "reasonably related" retaliation claims that had arisen while the federal case on the underlying complaint was still pending. *Id.* at 57–58. In *Soules*, we pointed out that, in order to avoid such a bar, the plaintiff could have moved to amend his federal complaint to include his related retaliation claim or could have requested a stay to permit him to administratively exhaust his new claims. *Id.* The reasoning in *Soules* turns on the notion that retaliation claims following an initial complaint are exempted from the exhaustion requirement precisely because they are related to an ongoing lawsuit.

failed to file a timely suit on the charges submitted in his 2011 EEOC complaint. Instead, we consider only those acts that occurred within 300 days of his 2014 EEOC complaint, and were thereby properly exhausted, as well as related claims of retaliation for filing the later EEOC charge.

2.      *Merits of the Exhausted 2011 Retaliation Claims*

Retaliation claims under Title VII are analyzed pursuant to the well-known *McDonnell Douglas* burden-shifting framework. *Littlejohn*, 795 F.3d at 315. At the pleading stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.* at 316. "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted). With respect to Duplan's claims of acts of retaliation committed within 300 days of his 2014 EEOC complaint, the City disputes only whether Duplan has adequately alleged the

24

second prong of that test, which goes to causation. We conclude that he has met

his minimal burden at the pleading stage of the case.[10]

To adequately plead causation, "the plaintiff must plausibly allege that the

retaliation was a 'but-for' cause of the employer's adverse action. . . . 'But-for'

causation does not, however, require proof that retaliation was the only cause of

the employer's action, but only that the adverse action would not have occurred

in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90–91 (internal

quotation marks, alterations, and citations omitted). Causation may be shown by

direct evidence of retaliatory animus or inferred through temporal proximity to

the protected activity. *Id.*

Relying on *Grant v. Bethlehem Steel Corporation*, 622 F.2d 43 (2d Cir. 1980),

Duplan contends that the more than two-year delay between his first EEOC

---

[10] Each discrete adverse employment action caused by retaliatory animus constitutes a separate "unlawful employment practice" that could give rise to a separate claim, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); however, because the parties do not discuss which of the acts alleged in the complaint are cognizable adverse employment actions and because the theory of causation on which Duplan prevails could potentially reach every adverse employment action within the relevant period, we consider all of the potential retaliation claims following the 2011 complaints as a single unit. On remand, however, it may well be appropriate for the district court to disaggregate and examine the viability of each constituent claim.

charge and these alleged adverse employment actions does not break the chain of causation because the City retaliated against him at the "first available opportunity" to do so in that particular manner. Appellant's Br. at 26. Even assuming that *Grant* establishes the principle that causation can be shown on that theory, however, it would be difficult to apply it to the facts that Duplan has alleged. In part, that problem is caused by the lengthy gap in time between his initial protected act and the ensuing instances of retaliation that were properly exhausted by his 2014 complaint. For instance, Duplan does not specify whether he was eligible for or received other raises between his 2011 complaints and the 2013 raise he was denied. It is also unclear how we could apply a "first available opportunity" theory to what Duplan alleges to be a persistent *pattern* of denying his applications for new positions when he has only exhausted the last denial in that chain.

Moreover, the bulk of the cases on which Duplan relies involved events that occurred only at specific, regularly scheduled or anticipated times that would present a particular opportunity for retaliatory conduct, such as annual performance reviews, tenure evaluations, or a deliberate decision not to rehire a plaintiff at the same time that other similarly situated workers were brought back

on board.[11] Duplan, by contrast, contends that the City was lying in wait for opportunities to retaliate against him that may or may not have ever occurred. His "first available opportunity" theory would require us to find it plausible that the City's plan to retaliate against him included, among other things, biding its time for three years until a flimsy sexual harassment complaint finally gave it an excuse to suspend him.

But an inference of causation is more easily drawn when one considers the facts as a whole. We recognized in *Grant* that "proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment." 622 F.2d at 46; *see also Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 SJF AKT, 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) (observing that a "pattern of antagonism" over the intervening period may be sufficient to demonstrate the requisite causal connection); *Hous. Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) (same). Duplan alleges

---

[11] *See, e.g.*, *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 SJF AKT, 2012 WL 3646935, at *14–15 (E.D.N.Y. Aug. 22, 2012) (annual review, tenure evaluation); *Pacheco v. Park S. Hotel, LLC*, No. 12 Civ. 9127 PAC, 2014 WL 292348, at *4–5 (S.D.N.Y. Jan. 27, 2014) (rehiring seasonal workers); *Quinby v. WestLB AG*, No. 04 Civ. 7406 WHP, 2007 WL 1153994, at *13 (S.D.N.Y. Apr. 19, 2007) (annual bonus determinations, along with poor performance reviews).

that each of the adverse actions alleged above occurred against a backdrop of continuing antagonism and frustration of his professional ambitions. Following his 2011 complaints, his supervisors collectively and persistently discouraged him from remaining at the Department by ostracizing him, giving him insufficient work, and making clear to him that his career would not advance further by denying him every promotion and raise. Those allegations establish a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn. Because the burden for establishing a *prima facie* case of retaliation is "*de minimis,*" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010), we conclude that Duplan's allegations are sufficient to survive at this stage. The district court, of course, remains free to re-assess the viability of these claims after discovery on a motion for summary judgment.

B.      *Retaliation Following the 2014 Complaints*

Duplan also alleges that he suffered retaliation *after* making his 2014 complaints. Those allegations are deemed exhausted by the operation of the "reasonably related" rule. The City contends that those claims should nevertheless fail because Duplan failed to adequately allege that he suffered an adverse employment action following his 2014 complaints. We disagree.

28

An adverse employment action in a retaliation case includes conduct that is "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017) (brackets omitted). We have previously recognized "'significantly diminished material responsibilities' as the sort of employment action 'sufficiently disadvantageous to constitute an adverse employment action' in a Title VII case." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007), quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). Duplan alleges that his responsibilities were so diminished shortly after he filed his 2014 complaint, when the City assigned him duties well below his civil service and functional titles and took away his access to the personnel management program, thereby rendering him unable to perform the sole task he had retained from his pre-2011 responsibilities.[12] Accordingly, we conclude that

---

[12] The district court determined that Duplan had not adequately alleged an adverse employment action, in part, because of the New York State agency's determination that some of the assignments about which Duplan complained fell within his civil service title. Even assuming that the district court properly took judicial notice of the state finding, it erred to the extent that it suggested that that finding might be dispositive of Duplan's Title VII claim. The state agency did not actually address all of the new, allegedly below-title tasks enumerated in Duplan's complaint, nor did it resolve Duplan's claim that the assignment of more menial tasks was linked to the reduction of his remaining substantive

Duplan's allegations that he suffered an adverse employment action in retaliation for filing his 2014 EEOC complaint are sufficient to avoid dismissal of his 2014 retaliation claim at the pleading stage.

### C.    *Hostile Work Environment Claim*

Finally, Duplan contends that he was subjected to a hostile work environment in retaliation for his 2011 and 2014 complaints. "In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks omitted). "A plaintiff must show not only that []he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* Duplan's allegations are not sufficient to meet that high bar.

---

assignments. Duplan has thus plausibly alleged that the actions, taken together, sufficiently diminished his responsibilities. Once again, further factual development may lead to rejection of this claim, and we do not attempt to predict how the district court on summary judgment, or a jury at trial, might evaluate the facts after discovery.

30

## CONCLUSION

We have considered Duplan's remaining arguments and conclude that they are without merit. For the foregoing reasons, we VACATE those portions of the district court's judgment that dismiss Duplan's Title VII retaliation claims with respect to alleged adverse actions occurring within 300 days before, or shortly after, he filed his 2014 EEOC charge. We AFFIRM the judgment in all other respects, and REMAND for proceedings consistent with this opinion.