23-731-cv
*Stanley v. Phelon*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand twenty-four.

Present:

> ROBERT D. SACK,
> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> *Circuit Judges.*

---

DAVID STANLEY,

> *Plaintiff-Appellant,*

> v.                                                                          23-731-cv

ELMER PHELON, ANTHONY BRACCO, NEIL STEWART, SUSAN JEFFREY, CITY UNIVERSITY OF NEW YORK,

> *Defendants-Appellees.*[1]

---

| For Plaintiff-Appellant: | STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY |
|---|---|
| For Defendants-Appellees: | CLELAND B. WELTON II (Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, *on the brief*), Assistant Solicitor General, *for* Letitia James, |

---

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Attorney General for the State of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant David Stanley appeals from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*), entered on March 31, 2023. Stanley sued his employer, Defendant-Appellee City University of New York ("CUNY"), and his supervisors, Defendants-Appellees Elmer Phelon, Anthony Bracco, Neil Stewart, and Susan Jeffrey (collectively with CUNY, "Defendants"), alleging that they discriminated against him on the basis of his disability, namely his kidney disease. Stanley, who worked as a Maintenance and Labor Supervisor at John Jay College (a subdivision of CUNY), asserted claims for disability discrimination, retaliation, and hostile work environment under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* On March 25, 2022, Defendants moved to dismiss Stanley's second amended complaint ("SAC"). While that motion was pending, on June 27, 2022, Stanley filed his first motion for leave to file a third amended complaint, proposing to add allegations of further retaliatory acts that occurred after the filing of the SAC. The district court denied that motion. *See Stanley v. City Univ. of New York*, No. 18 CIV. 4844 (PAE), 2022 WL 21808092 (S.D.N.Y. July 22, 2022). On March 1, 2023,

2

Stanley filed yet another motion for leave to file a third amended complaint ("TAC"), this time proposing to add allegations regarding Defendants' intention to terminate Stanley's employment. On March 30, 2023, the district court granted Defendants' motion to dismiss, finding that (1) Stanley's Rehabilitation Act and ADA claims based on alleged conduct predating May 31, 2015, were barred by the applicable statute of limitations, and (2) the remainder of Stanley's federal claims failed to state a claim. *See Stanley v. City Univ. of New York*, No. 18 CIV. 4844 (PAE), 2023 WL 2714181, at *1–24 (S.D.N.Y. Mar. 30, 2023). Additionally, the district court declined to exercise supplemental jurisdiction over Stanley's state law claims and denied Stanley leave to file a TAC. *Id.* at *23–26. This appeal followed. We assume the parties' familiarity with the case.

## I.     Motion to Dismiss

"We review *de novo* a district court's grant of a dismissal under Rule 12(b)(6). Accordingly, we accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor. The complaint must provide enough facts to state a claim to relief that is plausible on its face." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).[2]

### A. Retaliation

Stanley first argues that the district court erred by dismissing his retaliation claims under the Rehabilitation Act and the FMLA for failure to state a claim. A claim for retaliation under the Rehabilitation Act is subject to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To establish a prima facie case of retaliation under that framework, a plaintiff "must show

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

3

that: (1) he engaged in an activity protected by [those statutes]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* "A plaintiff's burden at this prima facie stage is *de minimis*." *Id.*

Under the first prong, a "[p]rotected activity is action taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019). As for the second prong, a plaintiff must show that "the employer . . . understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by" the Rehabilitation Act. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). Under the third prong, "[a]n adverse employment action in a retaliation case includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). And finally, with respect to the fourth prong, "a plaintiff must prove that 'but for' the disability, the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). "Proof of causation can be established either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.*

Claims for retaliation under the FMLA are subject to the same framework described above. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). The FMLA uses a

different causation standard, however, than the Rehabilitation Act.  Instead of but-for causation, "a 'motivating factor' causation standard applies to" FMLA retaliation claims.  *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).  Under that standard, a plaintiff need only show that his exercise of his rights under the FMLA "was a motivating factor in the [employer's] adverse employment action."  *Natofsky*, 921 F.3d at 347.

### i. Protected Activities

Stanley claims that the SAC adequately pleads four protected activities: (1) his six-month disability leave starting in February 2014, which was taken in connection with his kidney transplant; (2) his July 2017 discrimination complaint to the New York State Division of Human Rights, which was prompted by his receipt of a write up that "falsely blamed" him for a supervisee who was discharged, J. App'x at 32, ¶¶ 101–02; (3) his September 2017 email to Defendants complaining of toxic substances produced from a construction project in his work area and requesting relocation; and (4) his filing of the present lawsuit in May 2018.  Stanley's claims for retaliation under the Rehabilitation Act extend to all alleged protected activities, whereas his claim for retaliation under the FMLA is limited to the 2014 disability leave.  The district court construed the SAC to allege three protected activities—the 2014 disability leave, the 2017 discrimination complaint, and the 2018 lawsuit—but found that the 2017 email does not constitute a protected activity because it did not complain of discrimination based on Stanley's disability.  Stanley disagrees, arguing that the 2017 email is indeed a protected activity.

We agree with the district court that the 2017 email is not a protected activity.  The SAC alleges that on September 25, 2017, Stanley sent an email to Defendants "in which he complained of being required to continue working in an area where construction work was happening and that he was being covered in dust and steel particles that was compromising his health."  J. App'x at

30, ¶ 83.  Even when drawing all reasonable inferences in Stanley's favor, we find that this email does not constitute protected activity because there is no "specific indication," *Natofsky*, 921 F.3d at 354, that Stanley complained of discrimination based on or sought accommodation for his disability; he did not reference his condition or ask that his workspace be relocated because of it.

### ii. Adverse Actions

Turning to whether the SAC adequately alleges retaliation based on the three protected activities, Stanley argues that it does, identifying the following purportedly adverse actions: (1) Stanley received a performance evaluation for 2015 that was "a very biased and negative appraisal," which "made express reference to [his] excessive absences for poor health," J. App'x at 26, ¶¶ 40–41; (2) Stanley was removed from the hiring committee in 2015; (3) newly hired employees were told not to report to Stanley, even though Stanley was supposed to be their supervisor; (4) in July 2017, Stanley received a write up that "falsely blamed" him for a supervisee who was discharged, *id.* at 32, ¶ 101; (5) Defendants destroyed Stanley's work orders, directed staff not to submit his work orders, and changed his job description to include the supervision of electricians and carpenters in 2017–18; (6) Defendants denied Stanley further compensation for standby overtime after the filing of the 2017 complaint; (7) in September 2017, Defendants did not move Stanley's work area away from a construction project that emitted toxic substances, despite Stanley's request to do so; (8) in October 2018, Stanley received "a very biased negative work appraisal" that asserted, "without substance or support, that [Stanley] had failed to complete projects," *id.* at 32, ¶¶ 104–05; (9) in March 2019, Stanley was "passed over" for promotions, in favor of non-disabled individuals, because of "these biased . . . write ups," *id.* at 33, ¶¶ 110–11; and (10) in 2020, Defendants denied Stanley's request to work remotely.

We agree with the district court that the SAC fails to allege claims for retaliation based on

6

the above conduct. We address the conduct in relation to each protected activity below.

2014 Disability Leave. The district court properly found that the SAC fails to adequately plead retaliation in connection with the 2014 disability leave. The allegation concerning the 2015 performance evaluation "comes closest to plausibly alleging retaliation for Stanley's having taken leave," but we agree with the district court that the evaluation does not rise to the level of an adverse employment action. *Stanley*, 2023 WL 2714181, at *16. The remaining allegations of adverse actions fail to plead causation. Specifically, the SAC fails to allege any evidence (temporal or otherwise) that Defendants undertook those adverse actions as a result of the 2014 disability leave.

Additionally, we note that time-bar concerns play an especially important role in Stanley's FMLA claim based on the 2014 disability leave, since he introduced this claim in his SAC filed on September 28, 2021. Claims under the FMLA are subject to, at most, a three-year statute of limitations, *see* 29 U.S.C. § 2617(c)(1)–(2), meaning that Stanley's FMLA claim must stem from alleged retaliation that took place no earlier than September 2018. Given the gap of over four years, Stanley cannot rely on temporal proximity to plausibly suggest a causal connection between his leave and any alleged retaliation, and the SAC fails to allege any concrete facts that would otherwise permit an inference of retaliatory animus. Accordingly, Stanley's FMLA claim fails.

2017 Discrimination Complaint. We agree with the district court that the SAC fails to sufficiently plead causation with respect to the 2017 discrimination complaint. For example, the SAC fails to adequately plead that the Defendants' failure to move Stanley away from the construction in September 2017 was connected to the 2017 discrimination complaint. The SAC alleges that on September 25, 2017, Defendants started construction by Stanley's work area, and that the construction "caused extensive debris . . . and emitted toxic substances." J. App'x at 29,

7

¶¶ 78–79.  On the same day, Stanley emailed the Defendants' Director of Environmental Health and Safety, Lindsey Kayman, to complain about the construction.  Kayman directed Defendants, including Bracco and Stewart, to relocate Stanley.  After some resistance, Bracco "agreed . . . that [Stanley] could be moved to a conference room."  *Id.* at 31, ¶ 94.  However, Stanley did not move to the conference room because "Defendants refused to set up a computer there or any other equipment to permit [him] to work."  *Id.* at 31, ¶ 95.  These allegations fail to plead a causal connection between the Defendants' handling of the construction project and the 2017 discrimination complaint.  Additionally, we are skeptical that the alleged conduct concerning the construction rises to the level of an adverse action, especially when Defendants offered to move Stanley away from the construction.  Much of the remaining alleged conduct occurred a year or more after the 2017 discrimination complaint, which is typically too distant in time to give rise to an inference of causation.  *See Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding no causation where "more than a year had passed" between protected activity and alleged retaliation).

2018 Lawsuit.  The SAC fails to adequately allege a causal connection between the present lawsuit and the conduct that followed.  None of the conduct is particularly close in time to the filing of the lawsuit.  Nor are there any allegations of direct evidence of retaliatory animus.

In sum, the SAC fails to adequately plead claims for retaliation under the Rehabilitation Act or the FMLA.

### b.  Hostile Work Environment

Stanley argues that the district court erred by dismissing his hostile work environment claim under the Rehabilitation Act.  Arguing that the SAC alleges sufficiently severe harassment, Stanley points to allegations that on many occasions, Phelon "expressed [] frustration to other

managers . . . regarding Mr. Stanley's medical conditions and physical impairments and his need for intermittent medical leave," J. App'x at 25, ¶ 33, that "Phelon instructed another employee . . . to review [Stanley]'s medical records . . . without [his] authority or knowledge," *id.* at 25, ¶ 34, and that Defendants "harass[ed] [Stanley] and scrutinize[d] him and continued to berate him for his medical absences" after November 2013, *id.* at 27, ¶ 57, in addition to the allegations of misconduct identified above.

"To prevail on a hostile work environment claim, [a plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (establishing elements for a claim under the ADA); *see* 29 U.S.C. § 791(f) (providing that the Rehabilitation Act uses the same standards for employment discrimination claims as the ADA). "[T]he plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

In determining whether the "harassment was sufficiently severe," "[c]ourts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance." *Fox*, 918 F.3d at 74. "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

We agree with the district court that the SAC fails to state a hostile work environment

claim. Starting with the instances of misconduct identified above, the district court properly reasoned that the SAC fails to plead a connection between much of the misconduct and Stanley's "protected characteristic," *Tolbert*, 790 F.3d at 439, that is, his kidney disease. *See Stanley*, 2023 WL 2714181, at \*18. The remaining allegations concerning Phelon's statements, and efforts to review Stanley's medical records without authorization—although inappropriate—were not "sufficiently severe or pervasive to alter the conditions of his employment." *Fox*, 918 F.3d at 74. Moreover, the allegation regarding Defendants' verbal harassment is somewhat vague as to frequency and therefore does not rise to the level of sufficiently severe. *See Alfano*, 294 F.3d at 374 ("[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."). Accordingly, viewed in their totality, the alleged circumstances do not amount to a hostile work environment.

### c. Reasonable Accommodation

Stanley further argues that the district court erred by dismissing his reasonable accommodation claims under the Rehabilitation Act. Specifically, he argues that Defendants refused to engage in an interactive process to reach a reasonable accommodation and that Defendants denied him reasonable accommodation by rejecting his request to work remotely on a more permanent basis during the COVID-19 pandemic. "To establish a prima facie case of discrimination based on an employer's failure to accommodate a disability, under the Rehabilitation Act, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky*, 921 F.3d at 352.

10

We agree with the district court that the SAC fails to plead a reasonable accommodation claim because the allegations do not show that Stanley could perform the essential functions of the job with the requested accommodation and Defendants refused to accommodate him. The SAC alleges that (1) Defendants instructed all supervisors and managers to work remotely in March 2020; (2) on July 17, 2020, Stanley requested to work remotely beyond the summer of 2020; (3) in October 2020, Defendants advised Stanley that he could work remotely on a "trial basis," J. App'x at 34, ¶ 126; (4) on July 6, 2021, Defendants forced Stanley return to work in person; (5) on July 19, 2021, Stanley again requested to work remotely; (6) on July 26, 2021, Stanley provided a medical note to Defendants indicating that he was unable to develop immunity to COVID-19 after his vaccines; (7) on July 26, 2021, Stanley followed up on his request to work remotely to which Fraser responded that CUNY was processing the request; (8) on August 9, 2021, Defendants instructed Stanley to work remotely until further notice; and (9) on September 17, 2021, Defendants denied Stanley's request to work remotely because the essential functions of Stanley's position could not be performed remotely and, instead, offered masking and continued social distancing as an accommodation. The SAC also alleges that various other managers and supervisors, such as CUNY's Director of Accessibility Resource Lab & Testing, were permitted to work remotely.

Based on these allegations, the SAC fails to allege that Stanley could perform his job with his requested accommodation. As the SAC alleges, in September 2021, Defendants informed Stanley that he could not perform the essential functions of his position by working remotely. Stanley offers no allegations to the contrary, showing that he could perform his position remotely. He does not describe the particulars of his responsibilities at CUNY such that we could draw the inference that he could perform his job at home. And although Defendants permitted Stanley to

11

work from home for over a year, that period was during the initial phase of COVID-19. As the district court pointed out, Stanley's job responsibilities might have changed as the pandemic progressed and schools opened for in-person classes. *See Stanley*, 2023 WL 2714181, at *20. Though Stanley alleges that several of his colleagues were permitted to continue to work remotely, Stanley's SAC is devoid of allegations that these individuals were tasked with the same—or even similar—responsibilities and work functions.

Additionally, the SAC fails to allege that Defendants refused to grant a reasonable accommodation. Contrary to Stanley's contention, the allegations show that Defendants did engage in an interactive process with Stanley by offering to accommodate Stanley on multiple occasions, although the accommodations offered were not the ones that Stanley sought. But Defendants are not required to provide Stanley his preferred accommodation, and the SAC fails to allege how the offered accommodations—the remote work on a "trial basis" and mask and social distancing—were unreasonable. *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 95–96 (2d Cir. 2015) ("[T]he law requires an effective accommodation, not the one that is most effective for each employee."). Moreover, the SAC fails to sufficiently plead that a permanent remote work arrangement was a reasonable accommodation at the time that Defendants denied Stanley's request in September 2021, given, as explained above, the SAC's lack of allegations regarding Stanley's job responsibilities. *See McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

## II.    Motion for Leave to File a Third Amended Complaint

Finally, Stanley argues that the district court abused its discretion by twice denying him leave to file a TAC. "We review a district court's denial of a motion for leave to amend for abuse of discretion." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 609 (2d Cir. 2024). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal

12

standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 147 (2d Cir. 2022).

The standard for amending pleadings depends on when the amendment is sought:

> At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends— either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave freely when justice so requires pursuant to Rule 15(a)(2). This is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility. The period of liberal amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the good cause that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). In this case, Rule 3.B in the district court's Individual Rules and Practices in Civil Cases sets the deadline for amended pleadings, providing:

> If a motion to dismiss is filed, the plaintiff has a right to amend its pleading, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), within 21 days. If the non-moving party elects not to amend its pleading, no further opportunity to amend will ordinarily be granted, and the motion to dismiss will proceed in the normal course.

Judge Paul A. Engelmayer, Individual Rules and Practices in Civil Cases § 3.B (Apr. 2021), https://perma.cc/37MN-8RZ8.

Stanley filed two motions for leave to file a TAC. The district court denied the first motion, which sought to add allegations of retaliatory acts committed since the filing of the SAC, on the grounds of undue delay. Specifically, the district court reasoned that Stanley made the request two

months after the deadline for amended pleadings, failed to offer any reasons for the delay, and knew of the additional allegations before the deadline for amended pleadings. In its ruling, the district court initially cited the Rule 15(a)(2) standard as well as the Rule 16(b) standard but ultimately appeared to rely on the "good cause" standard under Rule 16(b). The district court also denied the second motion, which sought to add allegations of Stanley's impending termination, on the grounds that Stanley already had three opportunities to amend his complaint, each time with the benefit of a preview of Defendants' asserted grounds for removal, and that permitting another amended complaint would prejudice Defendants by delaying an already-protracted litigation. In its ruling, the district court cited the Rule 15(a)(2) standard.

Taking the first motion, we conclude the district court was well within its discretion to deny leave to amend under the Rule 16(b) standard requiring a showing of "good cause." We acknowledge that the language in Rule 3.B is more equivocal than the language described in *Sacerdote* to trigger the Rule 16(b) standard—it does not explicitly state "no amendment will be permitted" after a certain date. 9 F.4th at 115. But we nevertheless find that Rule 3.B does trigger the Rule 16(b) standard. Rule 3.B clearly sets a deadline for amendments taken as of right under Rule 15(a)(1)(B). Rule 3.B then states that "[i]f the non-moving party elects not to amend its pleading, no further opportunity to amend will ordinarily be granted, and the motion to dismiss will proceed in the normal course." This language suggests that the plaintiff would not (ordinarily) be given another opportunity to amend his pleadings after the Rule 15(a)(1)(B) deadline passes, comporting with Rule 16(b)'s higher standard for amendment rather than Rule 15(a)(2)'s more permissive one. Applying that standard, the district court did not abuse its discretion by denying Stanley's motion for leave to amend, where Stanley knew about the proposed, additional facts well

14

before the deadline for amended pleadings. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

As for the second motion, we find that the district court's error is harmless. The district court cited only the Rule 15(a)(2) standard, even though, as we explained above, the Rule 16(b) standard applies. But the error in the amendment standard did not prejudice Stanley. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 104 (2d Cir. 2008). Having failed to meet the more permissive standard under Rule 15(a)(2), Stanley certainly cannot meet the more onerous "good cause" standard under the applicable Rule 16(b). Even though Stanley moved within a month after finding out that Defendants intended to discharge him, Stanley nevertheless failed to demonstrate "good cause" because, as the district court explained, permitting another amended complaint would prejudice Defendants by delaying an already-delayed litigation.[3] The district court noted that its ruling would not preclude Stanley from filing a future lawsuit based on his termination.

Accordingly, we affirm the district court's denials of Stanley's motions for leave to file a third amended complaint.

\* \* \*

---

[3] The district court also explained that Stanley had not identified the addition of any allegations that would save his claims. "When the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). Because we conclude the district court had sufficient justification to find Stanley lacked "good cause" to amend on the basis of prejudice to Defendants, we need not consider whether amendment would have been futile.

We have considered Stanley's remaining arguments and find them unpersuasive. Accordingly, the district court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk