UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2020

(Argued: March 08, 2021     Decided: August 20, 2021)

Docket Nos. 20-1099-cv/20-1331-cv

───────────────────────

ANDREW SMALLS,
*Plaintiff-Appellant,*

v.

POLICE OFFICER RICHARD COLLINS AND POLICE OFFICER DAVID TETA,
*Defendants-Appellees,*

CITY OF NEW YORK, POLICE OFFICER ERIC CABRERA, POLICE OFFICER JESSICA
ALVARADO, SERGEANT BRIAN STAMM AND POLICE OFFICER ALVAREZ,
*Defendants.*

───────────────────────

DESHAWN DANIEL,
*Plaintiff-Appellant,*

v.

DETECTIVE BRIAN TAYLOR, DETECTIVE NEIL MAGLIANO, DETECTIVE JAMES CLEARY,
SERGEANT WESLEY FRADERA,
*Defendants-Appellees,*

CITY OF NEW YORK, JOHN AND JANE DOES 1-5, NEIL C. MAGLIANO,
*Defendants.*

───────────────────────

Before:     SACK, MENASHI, *Circuit Judges,* AND KAPLAN, *District Judge.*[*]

───────────────

[*] Judge Lewis A. Kaplan, of the United States District Court for the Southern District of
New York, sitting by designation.

In these tandem appeals, the plaintiffs-appellants Andrew Smalls and Deshawn Daniel each filed suit under 42 U.S.C. § 1983 (in the United States District Courts for the Eastern and Southern Districts of New York, respectively), asserting that the defendants-appellees deprived them of their rights to a fair trial by fabricating evidence against them. Daniel also asserted other claims under section 1983 and claims under 42 U.S.C. § 1981 and sought equitable tolling of the statute of limitations applicable to some of his section 1983 claims. Smalls's case proceeded to trial, and a jury found that Police Officers Richard Collins and David Teta had violated Smalls's constitutional rights and awarded him damages. In Daniel's case, following briefing on the defendants' motion to dismiss and Daniel's motion for equitable tolling, the district court denied Daniel's motion for tolling and dismissed all his claims aside from his section 1983 fabricated-evidence claim. Following the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), the defendants in Daniel's case again moved to dismiss the fabricated-evidence claim, contending that Daniel could not establish a favorable termination indicative of innocence – which, they asserted, *McDonough* requires. The defendants in Smalls's case moved for an order vacating the judgment and granting them judgment as a matter of law on the same basis. The district courts (Carol Bagley Amon and Ronnie Abrams, *Judges*, respectively) granted the defendants' motions, concluding that Smalls and Daniel could not establish favorable terminations within the meaning of *McDonough*. Smalls and Daniel now appeal. We conclude that (1) the district courts erred in dismissing Smalls's and Daniel's section 1983 fabricated-evidence claims and entering judgment for the defendants; (2) Daniel's section 1981 claims were properly dismissed; and (3) Daniel's equitable tolling motion was properly denied. We therefore

> REVERSE the judgments of the district courts with respect to the fair-trial claims, AFFIRM the dismissal of Daniel's other claims, and REMAND for further proceedings consistent with this opinion.

> JOEL B. RUDIN (Matthew A. Wasserman, Jacob Loup, Law Offices of Joel B. Rudin, P.C., New York, NY, and Jon L. Norinsberg, Law Offices of Jon L.

> Norinsberg, New York, NY, *on the brief*), *for Plaintiff-Appellant Andrew Smalls*;
>
> GREGORY ANTOLLINO, Antollino, PLLC, New York, NY, and STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY, *for Plaintiff-Appellant Deshawn Daniel*;
>
> JOHN MOORE (Richard Paul Dearing, Devin Slack, *on the brief*), for James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

SACK, *Circuit Judge*:

Although these appeals come to us in different procedural postures, they present similar material facts and closely related legal questions and were therefore heard, and are decided, in tandem.

Plaintiffs-appellants Andrew Smalls and Deshawn Daniel were each prosecuted in state court for criminal possession of a weapon (and, in Smalls's case, also for trespass); in each case, the criminal proceedings terminated without an extant criminal conviction or any remaining pending charges. Smalls was initially convicted of three counts, two of which were later dismissed on appeal and the third on remand. Daniel's charge was resolved by an adjournment in contemplation of dismissal, and his case was ultimately dismissed in its entirety.

3

Both subsequently filed civil suits against the defendants[1] (Smalls in the United States District Court for the Eastern District of New York, and Daniel in the Southern District). They asserted claims under 42 U.S.C. § 1983, each alleging that the defendants-appellees had deprived him of a fair trial by fabricating evidence. Daniel also asserted claims under 42 U.S.C. §§ 1981 and 1983 for racial discrimination, unlawful search and seizure, excessive force, failure to intervene, for municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and supervisory liability. Daniel further sought equitable tolling of the statute of limitations applicable to his claims.

Smalls's section 1983 fabricated-evidence claim proceeded to trial and a jury found Police Officers Richard Collins and David Teta (the "*Smalls* defendants") liable. The *Smalls* defendants subsequently moved for an order vacating the judgment and entering judgment in their favor based on the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), which held that section 1983 fabricated-evidence claims do not accrue (and therefore cannot be brought) until a criminal proceeding has ended in the defendant's favor or a resulting conviction has been invalidated within the meaning of *Heck*

---

[1] Unless otherwise noted, "defendants" refers collectively to the defendants-appellees in both appeals now before us.

*v. Humphrey*, 512 U.S. 477 (1994). *McDonough*, 139 S. Ct. at 2158. The district court (Carol Bagley Amon, *Judge*) granted the *Smalls* defendants' motion, reasoning that *McDonough*'s favorable-termination requirement for section 1983 fabricated-evidence claims is identical to that required for malicious-prosecution claims. In the context of malicious-prosecution claims, a plaintiff must demonstrate that the underlying criminal proceeding ended in a manner that affirmatively indicates her innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018). The district court concluded that Smalls could not meet this standard and that his claim was therefore barred.

Daniel's case proceeded through two rounds of motions to dismiss. Following the first such motion, the district court (Ronnie Abrams, *Judge*) dismissed Daniel's section 1981 claims, dismissed Daniel's claims for failure to intervene, supervisory liability, and municipal liability, and dismissed as untimely Daniel's section 1983 illegal search and excessive force claims. The district court also denied Daniel's cross-motion for equitable tolling of the statute of limitations applicable to his claims. In the wake of the district court's decision, only Daniel's section 1983 fabricated-evidence claim remained. The *Daniel* defendants moved to dismiss this claim based on *McDonough*. The district court

5

granted the motion. As in *Smalls*, the district court decided that the case law governing malicious-prosecution claims should guide its analysis. Because an adjournment in contemplation of dismissal does not constitute a favorable termination for malicious-prosecution claims, *see Rothstein v. Carriere*, 373 F.3d 275, 286-87 (2d Cir. 2004), the district court concluded that Daniel's adjournment in contemplation of dismissal was not a favorable termination within the meaning of *McDonough* and that his fabricated-evidence claim was therefore barred.

Smalls and Daniel both appeal. They contend that the district courts erred in dismissing their respective section 1983 fabricated-evidence claims because *McDonough* does not require a termination indicative of innocence, and their criminal proceedings terminated in their favor within the meaning of *McDonough*. Daniel also argues that the district court erred in dismissing his section 1981 claims and denying his motion for equitable tolling. For the reasons that follow, we conclude that (1) the district courts erred in dismissing Smalls's and Daniel's section 1983 fabricated-evidence claims and entering judgment for the defendants; (2) Daniel's section 1981 claims were properly dismissed; and (3) Daniel's equitable tolling motion was properly denied. We therefore reverse the

6

district courts' judgments with respect to the fair-trial claims, affirm the dismissal

of Daniel's other claims, and remand each matter for further proceedings

consistent with this opinion.

## BACKGROUND

### I.  Smalls

*A. Smalls's State Criminal Proceedings*

Plaintiff-appellant Andrew Smalls was indicted in the Supreme Court of

the State of New York, Queens County, on two counts of criminal possession of a

weapon (a firearm) and one count of criminal trespass.  Smalls filed a pre-trial

motion to suppress the firearm from use as evidence.

At the suppression hearing, police officers testified that, while in uniform,

they were on foot patrol at a New York City public housing project when they

heard a gunshot.  They walked to the rear of a building from or near which the

gunshots appeared to emanate.  There, they saw a group of five youths (four

males and one female), including Smalls, walking away from the building.  The

officers followed them for several blocks.  When, eventually, the youths became

aware of the officers' presence, they began to run.  The police gave chase and

followed the group further into the public housing complex, which had "no

trespassing" signs displayed, and up the stairs to the roof of one of the buildings. The officers testified that during the chase, they saw Smalls hand a pistol to a member of the group who turned out to be his brother, Ronnie; that the gun fell into the stairwell; and that the officers recovered the weapon one or two feet away from Ronnie. Following the hearing, the trial court denied Smalls's motion to suppress.

The case then proceeded to a jury trial. Smalls was convicted on all three counts. He was subsequently sentenced to twelve years' imprisonment on the first weapons charge for criminal possession of a weapon in the second degree, four years' imprisonment on the second weapons charge for criminal possession of a weapon in the third degree (to be served concurrently with the sentence for the first weapons charge), and time served on the trespass charge.

On appeal, the Appellate Division, Second Department, reversed Smalls's conviction. The court held that the trial court should have granted Smalls's motion to suppress the "physical evidence" – i.e., the firearm – because the police "lacked reasonable suspicion" to pursue Smalls. *People v. Smalls*, 83 A.D.3d 1103, 1104 (2d Dep't 2011). The court further found that "there [wa]s no evidence that, during the pursuit, the police had any basis for believing that [Smalls] . . . did not

in fact live in the public housing complex." *Id.* Accordingly, the court dismissed the two counts charging criminal possession of a weapon and ordered a new trial on the trespass count.

On remand, the trial court dismissed the remaining trespass count. After reopening the suppression hearing, the court concluded "that the observations made by the officers regarding [Smalls's] entry into and presence inside the subject public housing building, which were made during the illegal chase, are the fruits of an impermissible seizure." *Smalls* JA.36.[2] Because the court suppressed the officers' purported observations and there was no other evidence to support the trespass count, the court dismissed the indictment.

Smalls served two years, one month, and fourteen days in jail as a result of being charged and convicted of the criminal possession of a weapon counts.[3]

---

[2] As cited herein, "*Smalls* JA" refers to the Joint Appendix submitted in connection with Smalls's appeal. "*Daniel* JA" refers to the Joint Appendix submitted in connection with Daniel's appeal.

[3] According to Smalls, he was detained before trial and also for a period following his conviction in connection with another case that was ultimately dismissed. The parties stipulated in this case that Smalls's damages would therefore be based solely upon the portion of his imprisonment that was attributable exclusively to his convictions on the criminal possession of a weapon charges.

### B. Smalls's Section 1983 Action

After the dismissal of the criminal charges, on April 10, 2014, Smalls filed suit in the United States District Court for the Eastern District of New York, asserting – pursuant to 42 U.S.C. § 1983 – claims for malicious prosecution and deprivation of a fair trial through the introduction of fabricated evidence. After discovery and motion practice, the case proceeded to trial on a single claim: "that Officers Collins and Teta deprived Smalls of his right to a fair trial by fabricating evidence against him suggesting that he possessed a firearm." *Smalls v. Collins*, No. 14 Civ. 02326 (CBA) (RML), 2020 WL 2563393, at *1 (E.D.N.Y. Mar. 16, 2020).

At trial, the police officers' version of events (differing somewhat from the facts elicited in connection with the state criminal proceedings) was as follows: On the evening of May 19, 2006, after they heard a gunshot, the police pursued four men, including Smalls and his brothers Ronnie and Cedric, into a building located at 81-05 Rockaway Beach Boulevard, Queens, New York. Officer Collins testified that he saw Smalls hand a gun to Ronnie as the two were running up the stairs of the building. Officer Collins then followed Smalls and Ronnie to the roof, where Collins found a gun and proceeded to arrest them. Officers Collins and Teta testified that Smalls was wearing a black jacket.

10

Smalls contested the officers' version of events, testifying that he was not present when the police were chasing his brothers and allegedly saw him holding a gun. Smalls stated that he was playing cards in the apartment of a friend, Lindsey Johnson, when their mutual friend William Davis knocked on the door and told Smalls that his brothers Ronnie and Cedric were being arrested. Smalls went downstairs, where he saw his brothers being placed in a police car. Smalls then got into a verbal altercation with the officers, who slammed him against a wall, causing a cut above his eye, and then handcuffed him. Smalls testified that he was wearing a gray hooded sweatshirt, but no jacket; it was too warm for a jacket. Several witnesses – including Lindsey Johnson and William Davis – testified on Smalls's behalf and corroborated his version of events.

Smalls's attorney also elicited evidence that appeared to undercut the police officers' stories. For instance, the prisoner pedigree cards for Ronnie and Cedric said they were apprehended on the roof, while Smalls's card listed the arrest location only as 81-05 Rockaway Beach Boulevard – Officer Collins added the word "roof" later. *Smalls* JA.89-90, JA.251. Smalls's card also indicated that he was wearing a "grey hoodie," although Collins later crossed this out and wrote in "black jacket." *Smalls* JA.90, JA.251. There were also several photos

11

taken of Smalls the night of the incident; in each, he was wearing a gray hoodie and not a black jacket.  Moreover, Small's arrest photo listed resisting arrest, not criminal possession of a weapon, as the principal charge.

On May 20, 2019, the jury found, by a preponderance of the evidence, that Officers Collins and Teta deprived Smalls of his right to a fair trial by fabricating evidence, and the jury awarded him $60,000 in compensatory damages.  Smalls filed a post-verdict motion for a new trial on damages only, arguing that $60,000 was "grossly inadequate" to compensate him for two years of incarceration.  Pl. Mem. of Law at 1, *Smalls v. Collins*, No. 14 Civ. 2326 (CBA) (RML) (E.D.N.Y. June 18, 2019), ECF No. 134.  The *Smalls* defendants moved under Federal Rules of Civil Procedure 50, 54, and 60 "for an order vacating the judgment in the case and granting judgment in favor of defendants as a matter of law."  Notice of Motion, *Smalls v. Collins*, No. 14 Civ. 02326 (CBA) (RML) (E.D.N.Y. June 21, 2019), ECF No. 135.  They argued that they were entitled to this relief because the Supreme Court had held in *McDonough* that section 1983 fair-trial claims have a "favorable termination" requirement, which – according to the defendants – requires plaintiffs asserting fabricated-evidence claims to show that "the underlying criminal proceeding ended in a manner that *affirmatively indicates*

12

*[their] innocence*." Defs. Mem. of Law at 2, *Smalls v. Collins*, No. 14 Civ. 02326 (CBA) (RML) (E.D.N.Y. June 21, 2019), ECF No. 135-1 (emphasis in original) (internal quotation marks omitted).

On March 16, 2020, the district court granted the *Smalls* defendants' motion. The court explained that it had authority under Federal Rule of Civil Procedure 54(b) to reconsider a prior judgment at any time before the entry of final judgment, and concluded that the Supreme Court's decision in *McDonough* "constitute[d] an intervening change in controlling law warranting reconsideration of its prior orders." *Smalls*, 2020 WL 2563393, at *2. The court acknowledged that the issue presented in *McDonough* "was the accrual date of a fair-trial claim," but concluded that "the opinion's reasoning strongly suggests that the Supreme Court would [also] hold that favorable termination is a requirement of a fair-trial claim, at least in cases in which the plaintiff alleges a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding." *Id.* at *3. The court further "assume[d] that the standard for assessing favorable termination for purposes of Smalls's fair-trial claim . . . is the same as that for malicious prosecution." *Id.* at *7. The court explained that in the context of a malicious prosecution claim, "the plaintiff must demonstrate that the

13

underlying criminal proceeding ended in a manner that affirmatively indicates

plaintiff's innocence." *Id.* at *6 (alterations and internal quotation marks omitted).

Applying this standard, the court held that "Smalls did not, and could not,

establish favorable termination at trial," because the reversal of his conviction for

criminal possession of a weapon based on suppression of the evidence was not

indicative of innocence. *Id.* at *7-8**.** The district court therefore vacated the jury

verdict, entered judgment as a matter of law in favor of the *Smalls* defendants,

and denied as moot Smalls's motion for a new trial on damages. *Id.* at *9.

The district court entered judgment for the defendants on March 17, 2020.

This appeal followed.

## II.    Daniel

### A. Daniel's Allegations[4]

#### 1. Daniel's March 18, 2015 Arrest

Plaintiff-appellant Deshawn Daniel alleges that he has been the victim of

repeated police harassment.  During one such incident, a police officer smashed

---

[4] Because Daniel's claims were dismissed at the motion-to-dismiss stage, we draw the following facts primarily from the allegations in the complaint, augmented by affidavits that Daniel submitted in opposition to the defendants' motion to dismiss and in support of his cross-motion for equitable tolling.  We express no view as to the truth or falsity of Daniel's allegations.

his hand with a boot, requiring medical attention. The incident caused a long-term injury known as "Mallet Finger," which makes Daniel's right pinky droop and results in sharp pain in his right hand. Daniel filed a police-misconduct lawsuit relating to this incident; it was settled on undisclosed terms. Daniel purchased a used Mercedes-Benz convertible with some of the settlement proceeds.

Driving that car at night allegedly resulted in a false arrest. On March 18, 2015, officers observed Daniel driving his convertible onto Adam Clayton Powell Boulevard from the Macombs Dam Bridge, which connects the Bronx and Manhattan. The officers flashed their lights, sounded their siren, and pulled Daniel over to the side of the road. After inspecting Daniel's license and registration, they entered Daniel's information into their dash-computer. It disclosed that Daniel had an earlier arrest – the one related to the lawsuit that he had settled. They then directed Daniel to exit the vehicle, telling him that he had made an illegal left turn.

Daniel argued that he could not have made an illegal left turn because a left turn was the only legal turn available at that intersection. The officers opened the door to the automobile, pulled Daniel out, and then searched the

15

vehicle without Daniel's consent. One officer asked, "How you own a Mercedes convertible?" *Daniel* JA.38 ¶ 30. While the officers found nothing incriminating in the car, they brought Daniel to the local precinct, where they allegedly strip-searched him without probable cause.

The officers locked Daniel in a cell for approximately two to three hours, requiring that he remove his clothing. They then searched him and placed him against a wall. One of the officers put on an unlubricated latex glove and tried to perform an anal cavity check. When Daniel resisted, the officers slammed him on a table and twisted his arm, which bled. Daniel alleges that this encounter exacerbated his "Mallet Finger," such that he now cannot lift anything weighing more than three pounds with his bad hand. He also alleges that pain now radiates down that arm. The officers then allegedly falsified a charge, accusing Daniel of possessing a dangerous weapon – specifically, a so-called butterfly knife[5] – even though he, in fact, possessed no knife at all.

_____

[5] Wikipedia informs us that

> [a] balisong, also known as a fan knife, butterfly knife or Batangas knife, is a type of folding pocketknife that originated in the Philippines. Its distinct features are two handles counter-rotating around the tang such that, when closed, the blade is concealed within grooves in the handles. A latch holds the handles together, typically mounted on the one facing the cutting edge (the "bite handle").

16

Based on the allegedly false evidence presented against him, Daniel was arraigned in Criminal Court of the City of New York, County of New York, and charged with criminal possession of a weapon. The charge was ultimately resolved by an adjournment in contemplation of dismissal ("ACD") pursuant to New York Criminal Procedure Law § 170.55.[6] On June 13, 2016, the case against Daniel was dismissed in its entirety and the case file sealed.

### 2. *Daniel Files His Section 1983 Action Over Three Years After His Arrest*

Daniel alleges that, following his March 18, 2015 arrest, he complained to the New York Police Department's Internal Affairs Board. He asserts that he was told someone would get back to him, but no one did.

---

*Butterfly knife*, WIKIPEDIA, https://en.wikipedia.org/wiki/Butterfly_knife (last visited July 21, 2021).

[6] New York Criminal Procedure Law § 170.55(1) provides that "[u]pon or after arraignment in a local criminal court upon an information, a simplified information, a prosecutor's information or a misdemeanor complaint, and before entry of a plea of guilty thereto or commencement of a trial thereof, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, order that the action be 'adjourned in contemplation of dismissal[.]'" "An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice." N.Y. Crim. Proc. Law § 170.55(2).

Daniel further alleges that in December 2015, he was in an automobile accident. After the accident, he met with a lawyer who told him that she would represent him both in regard to the accident and his arrest. After engaging her as his attorney, Daniel called her many times to inquire about the progress of the case and requested that she initiate the action or turn over the case file. Eventually, in November 2017, the attorney's office told Daniel that she was not representing him.

Five months later, on April 27, 2018, Daniel filed suit in the United States District Court for the Southern District of New York, represented by another lawyer.

### B. *The District Court Proceedings*

In the April 27th action, Daniel asserted various claims under 42 U.S.C. §§ 1981 and 1983 for, *inter alia*, racial discrimination, unlawful search and seizure, excessive force, failure to intervene, deprivation of a fair trial through the use of fabricated evidence, and *Monell* and supervisory liability. On April 30, 2018, he filed an amended complaint. On July 24, 2018, the *Daniel* defendants moved to dismiss. Daniel cross-moved for equitable tolling of the statute of limitations applicable to his claims.

On March 31, 2019, the district court granted the motion to dismiss in part.

The district court dismissed Daniel's section 1981 claims on the grounds that,

"under the law of this Circuit, 'the express cause of action for damages created by

§ 1983 constitutes the exclusive federal remedy for violation of the rights

guaranteed in § 1981 by state governmental units.'" *Daniels v. City of New York*,

No. 18 Civ. 3717 (RA), 2019 WL 1437586, at *2 (S.D.N.Y. Mar. 31, 2019)[7]

(emphasis omitted) (quoting *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir.

2018)).  The district court also dismissed Daniel's claims for failure to intervene,

supervisory liability, and municipal liability.  *Id.* at *3-5.  And the district court

dismissed as untimely Daniel's section 1983 illegal search and excessive force

claims because Daniel filed the action outside the three-year limitations period.

*Id.* at *2.  The district court declined, however, to dismiss Daniel's section 1983

fair-trial claim based on fabricated evidence because it found that the claim was

not clearly time-barred.  *Id.* at *3.

In dismissing Daniel's section 1983 illegal search and excessive force claims

as untimely, the district court also denied Daniel's cross-motion for equitable

---

[7] Daniel's lawyer erroneously referred to his client as Deshawn Daniels when he initially filed this case, and the district court's case caption therefore reflects this error.  We retain the mistaken spelling only when citing the district court's decisions in the underlying case.

19

tolling. *Id*. at *6. The district court acknowledged Daniel's argument that he was entitled to equitable tolling because "(1) he never heard back from the IAB after he filed a complaint with them in 2015, (2) he believed another attorney was representing him for a portion of the limitations period, and (3) he suffered a hand injury that prevented him from finding an attorney," but found that these circumstances did not warrant tolling the statute of limitations. *Id.* The district court explained that "the IAB's failure to provide [Daniel] with the results of its investigation was neither extraordinary nor a circumstance that prevented [Daniel] from timely filing a complaint in federal court." *Id.* The court further explained that his attorney's failure to get back to him did not justify tolling because, "[e]ven if [he] believed that this attorney had agreed to represent him[,] . . . he did not display reasonable diligence in allowing her to represent him for two years without ever filing a complaint." *Id.* In addition, the district court wrote, "once [Daniel] affirmatively learned that the attorney was not representing him, he still had five months before the close of the limitations period to file a complaint," and he provided "no explanation for his failure to file within that five-month time period." *Id.* Finally, the district court concluded that Daniel's reliance on his hand injury was unconvincing because "[a] person acting

with reasonable diligence under such circumstances would have, at some point

during the three-year limitations period, found a way to pursue his claims –

perhaps with the help of a friend or family member, or through the use of his

other hand." *Id.*

On April 29, 2019, Daniel filed a second amended complaint. The *Daniel*

defendants again moved to dismiss. On March 11, 2020, the district granted the

defendants' motion and dismissed the remaining fair-trial claim based on

*McDonough*. *Daniels v. Taylor*, 443 F. Supp. 3d 471, 474, 479-80 (S.D.N.Y. 2020).

The district court decided that the case law governing malicious prosecution

claims should guide its analysis of Daniel's fair-trial claim and explained that, to

assert a malicious-prosecution claim, a plaintiff must demonstrate "that the

underlying criminal proceeding ended in a manner that affirmatively indicates

his innocence." *Id.* at 478 (internal quotation marks omitted). The district court

further noted that, in the context of malicious-prosecution claims, "an ACD is not

a favorable termination because it leaves open the question of the accused's

guilt." *Id.* (internal quotation marks omitted). The district court then concluded

that Daniel's acceptance of the ACD barred his fair-trial claim. *Id.* at 478-80.

The district court entered judgment on March 27, 2020. Daniel appealed.

21

## DISCUSSION

## I.     Standard of Review

"We review *de novo* the district court's decision on a motion for judgment as a matter of law," applying "the same standard that is required of the district court."[8]  *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007).  "We 'consider the evidence in the light most favorable to the party against whom the motion was made and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'"  *Id.* (ellipsis in original) (quoting *Black v. Finantra Cap., Inc.*, 418 F.3d 203, 209 (2d Cir. 2005)).  "[A] court may grant a motion for judgment as a matter of law 'only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled

---

[8] Although the district court entertained the *Smalls* defendants' post-trial motion as a motion for reconsideration under Rule 54, it treated the motion as one for judgment as a matter of law notwithstanding the jury verdict.  We therefore apply the standard of review applicable to such motions.

Even if we were to consider this motion under the standard of review applicable to motions for reconsideration, however, that would not change the result because, as explained below, the district court's decision in *Smalls* rests on a legal error and therefore constitutes an abuse of discretion.  *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003) ("A court abuses its discretion when its decision rests on a legal error or a clearly erroneous factual finding, or when its decision does not fall within the range of permissible decisions.").

to accept the view of the moving party.'" *Id.* at 370-71 (emphasis omitted)

(quoting *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)).

"We review de novo a dismissal of a complaint for failure to state a claim

upon which relief may be granted." *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467

(2d Cir. 2019). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* "[W]e accept only [the complaint's]

factual allegations, and the reasonable inferences that can be drawn therefrom, as

true." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014); *Chambers v. Time Warner,

Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

## II. Daniel's and Smalls's Section 1983 Fabricated-Evidence Claims

The plaintiffs argue on appeal that the district courts erred in granting the

defendants' motions because (1) *McDonough* does not require plaintiffs asserting

section 1983 fair-trial claims based on fabricated evidence to demonstrate that

their underlying criminal proceedings terminated in a manner indicative of

innocence; and (2) their underlying criminal proceedings were terminated in

such a way that satisfies *McDonough*'s accrual rule. For the reasons explained below, we agree.

### A. Applicable Law

#### 1. Elements of a Fair-Trial Claim Based on Fabricated Evidence Prior to *McDonough*

Prior to *McDonough*, we held that to establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). "[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must [therefore] prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Id.* at 279-80.

In contrast to malicious prosecution claims, which require a plaintiff to demonstrate "that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence," *Lanning*, 908 F.3d at 22, we have long held

"that Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for [the] deprivation of liberty" that the plaintiff suffered.  *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  The same is true of other types of section 1983 fair-trial claims, such as those alleging the withholding of exculpatory or other impeachment material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (*en banc*) (Because *Brady* ensures a fair trial and "proof of the constitutional violation need not be at odds with [the defendant's] guilt," "a defendant's right to pre-trial disclosure under *Brady* is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence was disclosed, much less that he is in fact innocent." (emphases and internal quotation marks omitted)).  This is because malicious-prosecution and fair-trial claims "arise out of different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns."  *Simon v. City of New York*, No. 16 Civ. 1017 (NGG) (RML), 2020 WL 1323114, at *6 (E.D.N.Y. Mar. 19, 2020).

25

Malicious-prosecution claims "essentially allege[] a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure," the "touchstone" of which is "reasonableness." *Lanning*, 908 F.3d at 28 (internal quotation marks omitted); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated[.]" (emphasis added)). The "essence" of such a claim "is the alleged groundless prosecution[.]" *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980). A favorable termination of the underlying criminal proceeding indicative of innocence is therefore necessary to establish a viable claim because, "absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'" *Lanning*, 908 F.3d at 28 (alteration in original) (quoting *Conway v. Vill. of Mt. Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)); *see also Singleton*, 632 F.2d at 195 (a plaintiff does not have a viable claim for malicious prosecution where the prosecution was based on probable cause but resulted in a hung jury).

A section 1983 fair-trial claim, by contrast, will not be defeated by evidence of probable cause because it "cover[s] kinds of police misconduct not addressed

26

by . . . malicious prosecution claims" and vindicates a different constitutional right – the right to due process protected by the Fifth and Fourteenth Amendments. *Garnett*, 838 F.3d at 278. The due process clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 2; *accord* U.S. Const. amend. V, and thus, unlike a plaintiff asserting a Fourth Amendment violation, a plaintiff may assert a violation of her due process rights even where the relevant deprivation was otherwise "[]reasonable," U.S. Const. amend. IV. "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process,'" and deprivation of life, liberty, or property under such circumstances violates the accused's right to due process. *Ricciuti*, 124 F.3d at 130 (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)); *Garnett*, 838 F.3d at 278-79 ("[T]here is a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against an arrestee." (internal quotation marks omitted)). "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately

27

manufacture false evidence against an arrestee." *Ricciuti*, 124 F.3d at 130; *see also*

*Poventud*, 750 F.3d at 137 ("[E]ven [a] guilty man is entitled to a fair trial." (second

alteration in original) (internal quotation marks omitted)). To hold otherwise

"would make a mockery of the notion that Americans enjoy the protection of due

process of the law and fundamental justice." *Ricciuti*, 124 F.3d at 130. We have

therefore never required that a plaintiff alleging a section 1983 fair-trial claim

establish a favorable termination indicative of innocence. *See Garnett*, 838 F.3d at

278-79; *Poventud*, 750 F.3d at 134 (rejecting the view that "the State could violate

Poventud's *Brady* rights only if Poventud is an innocent man").

### 2. *Evolution of the Accrual Rule for Section 1983 Fair-Trial Claims*

Even where a plaintiff meets all the elements of a section 1983 claim, the

plaintiff must also establish that the claim has accrued for purposes of the statute

of limitations. Although we "look to state law for the length of the limitations

period, the time at which a § 1983 claim accrues is a question of federal law,

conforming in general to common-law tort principles." *McDonough*, 139 S. Ct. at

2155 (internal quotation marks omitted). Where the claim has not yet accrued,

the claim is not cognizable and the plaintiff may not bring an action. *See Heck*,

28

512 U.S. at 483 (Section 1983 claim had "not yet arisen" because it had not yet accrued; dismissal was therefore appropriate).

In *Heck*, the Supreme Court announced an accrual rule for section 1983 actions involving an underlying criminal conviction. The plaintiff there was serving a sentence on an underlying conviction; while the appeal from his conviction was pending, the plaintiff filed a section 1983 action challenging the legality of his conviction. *Id.* at 478-79. The district court dismissed his claim and the Seventh Circuit affirmed. *Id.* at 479-80. The Supreme Court affirmed, concluding that Heck's claim was barred because "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

The Supreme Court explained that section 1983 "creates a species of tort liability" and therefore looked to the common law of torts for guidance. *Id.* at 483 (internal quotation marks omitted). The Court concluded that the "common-law cause of action for malicious prosecution provide[d] the closest analogy to claims of the type considered [in *Heck*] because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Id.* at 484. It noted that to prove malicious

prosecution, it is necessary to establish "termination of the prior criminal proceeding in favor of the accused." *Id.* This requirement, the Court explained, "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* (alteration in original) (internal quotation marks omitted). With these "concerns for finality and consistency" in mind, the Court concluded that section 1983 damages actions "that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 485-86.

Accordingly, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. If, however, "the district court determines that the plaintiff's action, even if successful, will *not*

30

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original) (internal footnote omitted). The Supreme Court then provided several examples of ways in which a section 1983 plaintiff could meet this accrual rule, explaining that this requirement would be satisfied if "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87.

In *McDonough*, the Supreme Court extended the rule announced in *Heck* to ongoing criminal prosecutions. *McDonough* arose "out of an investigation into forged absentee ballots that were submitted in a primary election in Troy, New York, in 2009." *McDonough*, 139 S. Ct. at 2153. The plaintiff, Edward McDonough, processed the ballots in his capacity as commissioner of the county board of elections and maintained that he was unaware that they had been forged. *Id.* Youel Smith was appointed to investigate and prosecute the matter; he prosecuted McDonough over the course of two trials: the first ended in a mistrial and the second in acquittal. *Id.* at 2154. Just under three years after his

31

acquittal, McDonough sued Smith and other defendants under section 1983,

alleging that they had fabricated evidence in violation of his right to a fair trial.

*Id.* Both the district court and the Second Circuit concluded that McDonough's

fabricated-evidence claim was untimely. *Id.* The Second Circuit held that

McDonough's fabricated-evidence claim accrued "'when (1) McDonough learned

that the evidence was false and was used against him during the criminal

proceedings; and (2) he suffered a loss of liberty as a result of that evidence.'" *Id.*

(quoting *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018), *rev'd*, 139 S. Ct.

2149 (2019)). Because both occurred more than three years prior to the date

McDonough filed suit, the Second Circuit concluded that McDonough's claim

was barred by the three-year statute of limitations. *See McDonough*, 898 F.3d at

265. The Supreme Court granted certiorari to resolve a split among the Courts of

Appeals regarding when the statute of limitations begins to run for a fabricated-

evidence claim. *Id.* at 2154-55. In resolving this question, the Court "assume[d]

without deciding that the Second Circuit's articulations of the right at issue and

its contours [we]re sound, having not granted certiorari to resolve those separate

questions." *Id.* at 2155.

32

Relying extensively on its prior decision in *Heck*, the Court found it useful to analogize McDonough's fabricated-evidence claim to the common-law tort of malicious prosecution, noting that malicious prosecution's favorable-termination requirement "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting judgments." *Id.* at 2156-57. The Court explained that "similar concerns for finality and consistency" had motivated it to limit the "avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983" and to adopt *Heck*'s "favorable-termination requirement." *Id.* at 2157 (internal quotation marks omitted). Although *McDonough* differed from *Heck* because the plaintiff in *Heck* had been convicted while the plaintiff in *McDonough* was acquitted, the Court reasoned that McDonough's claims challenged the validity of the criminal proceedings against him "in essentially the same manner" as the plaintiff in *Heck*. *Id.* at 2157-58.

A criminal defendant therefore cannot "bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Id.* at 2158. "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*,

will the statute of limitations begin to run." *Id.* (internal citation omitted).

Applying this newly formulated rule, the Court reversed the judgment of the

Second Circuit, concluding that the statute of limitations for McDonough's

section 1983 fabricated-evidence claim did not begin to run until the criminal

proceedings against him "terminated in his favor – that is, when he was acquitted

at the end of his second trial." *Id.* at 2161.

> B. *McDonough's Favorable-Termination Requirement Does Not Require a Termination Indicative of Innocence*

*McDonough* did not alter the substantive elements of a fabricated-evidence

claim as it is understood in this Circuit. To the contrary, in *McDonough*, the

question was limited to determining "when the statute of limitations began to

run" and the Supreme Court "assume[d] without deciding that the Second

Circuit's articulations of the right at issue and its contours are sound, having not

granted certiorari to resolve those separate questions." *Id.* at 2155. *McDonough*

thus left intact our jurisprudence surrounding the elements of fabricated-

evidence claims.

*McDonough* did, however, announce a new accrual rule for fabricated-

evidence claims. Relying on *Heck's* "favorable-termination requirement," the

Supreme Court concluded that "[t]here is not a complete and present cause of

action to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are *ongoing*." *Id.* at 2157-58 (emphasis added) (internal quotation marks and citation omitted). "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *Id.* at 2158 (internal citation omitted). To bring a fabricated-evidence claim, a plaintiff must therefore establish – as a condition precedent to suit – that the claim has accrued within the meaning of *McDonough*.

The core question at the heart of these appeals is what constitutes a favorable termination sufficient to trigger *McDonough*'s accrual rule for fabricated-evidence claims. The defendants point out that *McDonough*'s accrual rule for fabricated-evidence claims was premised on an analogy to malicious-prosecution claims and argue that *McDonough*'s favorable-termination requirement should thus be interpreted to be coextensive with malicious prosecution's favorable-termination requirement, under which a plaintiff must establish that the proceeding ended in a manner indicative of innocence. This argument is inconsistent with the reasoning and holding of *McDonough* and, we think, lacks merit.

The starting point for understanding the force and effect of *McDonough* is *Heck*, upon which *McDonough* relied heavily to determine the appropriate accrual rule for fabricated-evidence claims. *See McDonough*, 139 S. Ct. at 2156-61. In *Heck*, the plaintiff filed a section 1983 action while he was still in prison for his underlying conviction. *See Heck*, 512 U.S. at 478-79. The Court expressed concern that allowing a section 1983 plaintiff to seek damages while still serving a sentence on the underlying conviction would promote an end-run around Congress's choice that habeas corpus, with its strict procedural rules, be the sole basis for challenging the constitutional validity of an outstanding state criminal conviction. *See id.* at 480-84. In determining whether such an action had accrued, the Court analogized to malicious prosecution's favorable-termination requirement as "illustrative of the common-law principle barring tort plaintiffs from mounting collateral attacks on their outstanding criminal convictions." *Heck*, 512 U.S. at 486 n.4. Malicious prosecution's favorable-termination requirement, the Court explained, "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the

creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484 (alteration in original) (internal quotation marks omitted). The Court noted that similar concerns for "finality and consistency" were implicated on the facts of *Heck* and accordingly concluded that section 1983 tort actions "are not appropriate vehicles for challenging the validity of outstanding criminal judgments[.]" *Id.* at 485-86.

Notably, *Heck's* analogy to malicious prosecution did not result in the Supreme Court's adoption of a termination-indicative-of-innocence requirement for all section 1983 claims premised on an underlying conviction. Rather, to guard against parallel litigation and promote finality and consistency, the Court adopted an accrual rule designed to avoid inconsistent results and new avenues of collateral attack. *See id.* at 486-89. Under the *Heck* Court's favorable-termination requirement,[9] if a section 1983 plaintiff establishes – before bringing suit – that the "action, even if successful, will *not* demonstrate the invalidity of any *outstanding* criminal judgment against the plaintiff, the action should be

---

[9] Although the *Heck* Court did not itself refer to its rule as a "favorable-termination" requirement, it has become widely referred to and recognized as such. *See, e.g., McDonough*, 139 S. Ct. at 2157 (referring to the *Heck* rule as a "favorable-termination requirement"); *Muhammad v. Close*, 540 U.S. 749, 754 (2004) (discussing "*Heck*'s favorable termination requirement"); *McKithen v. Brown*, 481 F.3d 89, 101 n.13 (2d Cir. 2007) ("[T]he *Heck* rule has come to be known as the 'favorable termination' requirement.").

allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (first emphasis in original, second emphasis added) (footnote omitted). A plaintiff may satisfy this requirement by demonstrating "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* None of these resolutions requires an affirmative showing of innocence. *See Savory v. Cannon*, 947 F.3d 409, 429 (7th Cir. 2020) (*en banc*) (noting that all of *Heck*'s favorable "outcomes can occur without a declaration of a defendant's innocence."); *see also Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 n.11 (9th Cir. 2020) (rejecting the argument that "*Heck* establishes an exact replica of the favorable-termination rule from the malicious-prosecution context.").

Interpreting *McDonough* to essentially graft malicious prosecution's distinctive favorable-termination requirement onto fabricated-evidence claims, as the defendants request, would thus require us to conclude that *McDonough* has overruled *Heck*. But *McDonough* did no such thing. To the contrary, the *McDonough* Court found itself confronted with a set of facts that raised concerns similar to those present in *Heck* and simply extended *Heck*'s reach to section 1983

38

lawsuits brought during pending criminal prosecutions. *See McDonough*, 139 S. Ct. at 2160 ("*Heck* explains why favorable termination is both relevant and required for a claim analogous to malicious prosecution that would impugn a conviction, and that rationale extends to an ongoing prosecution as well: The alternative would impermissibly risk parallel litigation and conflicting judgments."). Although the *McDonough* plaintiff's claims did not fall within *Heck* because, unlike the plaintiff in *Heck*, he had been acquitted and there was therefore no outstanding conviction, the Supreme Court decided that the "pragmatic considerations" underlying the *Heck* rule apply with equal force to "*ongoing*" criminal proceedings. *See id.* at 2157-58 (emphasis added).

The *McDonough* Court explained that imposing "a ticking limitations clock on criminal defendants as soon as they become aware that fabricated evidence has been used against them" would require criminal defendants to make "an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id.* at 2158. The first option "[wa]s obviously undesirable," while the latter course was also "fraught with peril" because the defendant "risks tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and

39

taking on discovery obligations not required in the criminal context." *Id.*

Moreover, "the parallel civil litigation that would result if plaintiffs chose the

second option would run counter to core principles of federalism, comity,

consistency, and judicial economy." *Id.* The Supreme Court therefore held that

"[o]nly once the criminal proceeding has ended in the defendant's favor, or a

resulting conviction has been invalidated within the meaning of *Heck*, will the

statute of limitations begin to run." *Id.* (internal citation omitted). In reaffirming

the *Heck* rule while extending it to ongoing prosecutions, *McDonough* no more

required an affirmative indication of innocence than *Heck* did.

Indeed, the notion that *McDonough* established malicious prosecution's

favorable-termination requirement as the accrual rule for section 1983 fair-trial

claims is inconsistent with the rule announced in *McDonough*. The Supreme

Court phrased its accrual rule disjunctively, making clear that invalidation of a

conviction within the meaning of *Heck or* termination of an ongoing criminal

proceeding in the defendant's favor would be sufficient to trigger the statute of

limitations. *Id.*; *see also Roberts*, 947 F.3d at 1201 n.11. Further, while the Court

had "no occasion to address the broader range of ways a criminal prosecution (as

opposed to a conviction) might end favorably to the accused" because the

40

plaintiff's "acquittal was unquestionably a favorable termination," it suggested that a "context-specific and more capacious understanding of what constitutes 'favorable' termination" might be appropriate for fabricated-evidence claims in light of prosecutors' broad discretion over "the terms on which pleas will be offered or whether charges will be dropped[.]" *McDonough*, 139 S. Ct. at 2161 n.10. This language undercuts any suggestion that *McDonough*'s accrual rule is merely coextensive with malicious prosecution's favorable-termination requirement.

Requiring a plaintiff alleging fabricated-evidence claims to establish that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence would also be fundamentally inconsistent with our longstanding distinction between section 1983 fair-trial and malicious-prosecution claims. As noted above, malicious-prosecution and fair-trial claims assert the violation of different constitutional rights and protect against different constitutional injuries. It makes sense to require a favorable termination indicative of innocence in the context of malicious prosecution claims where the essence of such a claim "is the alleged groundless prosecution[.]" *See Singleton*, 632 F.2d at 195. Absent affirmative indications of innocence, the termination of

41

the proceeding does not necessarily mean that the government lacked reasonable grounds for initiating the prosecution; a favorable termination indicative of innocence is therefore critical to determining whether the plaintiff has a viable claim. *See Lanning*, 908 F.3d at 28. A section 1983 fair-trial claim, by contrast, focuses on the constitutionality of the process and addresses a different constitutional injury – deprivation of life, liberty, or property due to corruption of due process by official misconduct. *See Ricciuti*, 124 F.3d at 130; *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020). Whether the proceeding was terminated in a manner indicative of innocence therefore is not dispositive in the context of a section 1983 fair-trial claim, and we have never required that a plaintiff alleging such a claim establish a favorable termination indicative of innocence.

Accordingly, *McDonough*'s accrual rule does not import malicious prosecution's favorable-termination requirement onto section 1983 fair-trial claims. Where the plaintiff asserts a section 1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction. *See McDonough*, 139 S. Ct. at 2158,

2160; *Heck*, 512 U.S. at 486-87; *see also Savory*, 947 F.3d at 417-18, 429-30 (the plaintiff's pardon constituted a favorable termination within the meaning of *Heck* and *McDonough* because the plaintiff's "conviction was set aside with this pardon."). This requirement may be satisfied where a criminal conviction has been invalidated or a criminal prosecution has been terminated in the criminal defendant's favor because, in such circumstances, there is no risk that a section 1983 plaintiff's claim will impugn an existing conviction or the basis for an ongoing prosecution.

### C.  *Smalls's Criminal Proceeding Terminated in his Favor*

*McDonough* holds that a fabricated-evidence claim may accrue where a "criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*[.]" *McDonough*, 139 S. Ct. at 2158.  A conviction is invalidated within the meaning of *Heck* if it was "reversed on direct appeal" because, under those circumstances, the "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff[.]" *Heck*, 512 U.S. at 487.  A criminal proceeding likewise ends in the defendant's favor where any remaining charges are dismissed on remand following the vacatur or reversal of a judgment of

conviction on appeal, because, in such circumstances, there is no ongoing prosecution that poses an impermissible risk of parallel litigation and conflicting judgments. *See McDonough*, 139 S. Ct. at 2160.

Both occurred here and we are therefore presented with two potential accrual dates: (1) the date the Appellate Division reversed Smalls's judgment of conviction on direct appeal and dismissed the weapons-possession counts; or (2) the date the trial court dismissed the trespass count on remand, following the Appellate Division's reversal of Smalls's conviction. Smalls contends that the accrual of his claim should run from the date the Appellate Division reversed his judgment of conviction and dismissed the weapons-possession charges, because his section 1983 fair-trial claim was based solely on the allegedly fabricated evidence used to convict him of those weapons charges. While the trespass charge remained after his judgment of conviction was reversed and the criminal possession of a weapon charges were dismissed, he argues that this did not affect the accrual of his claim because success on his fabricated-evidence claim would not impugn the independent basis for the trespass prosecution. We need not decide which date triggered the accrual of Smalls's fabricated-evidence claim for

purposes of this appeal because, in any event, his underlying criminal proceeding terminated in his favor and has therefore accrued.

Indeed, even assuming *arguendo* that Smalls's fabricated-evidence claim accrued on the later date —when Smalls's trespass count was dismissed – there is no question that Smalls's claim does not implicate the concerns outlined in *McDonough*. Smalls's section 1983 fabricated-evidence claim poses no risk of demonstrating the invalidity of any outstanding criminal judgment because there is no such judgment. And his lawsuit does not run parallel to, nor does it impugn, any pending prosecution or existing conviction because there is no conviction and there are no pending charges. Smalls has therefore satisfied *McDonough* and there is no bar to his suit.[10]

---

[10] The *Smalls* defendants argue that, even if a termination indicative of innocence is not required, a plaintiff asserting a section 1983 fair-trial claim based on fabricated evidence must at least demonstrate that the underlying criminal proceeding did not end in a manner that includes affirmative indications of the plaintiff's guilt. They point out that Smalls's trial attorney claimed that Smalls possessed the gun police recovered in order to establish standing to request a suppression hearing and that the Appellate Division assumed this to be true for purposes of resolving Smalls's motion. The defendants contend that Smalls therefore cannot establish a favorable termination as required by *McDonough*.

This argument is unpersuasive for the same reasons explained above. Neither *McDonough* nor *Heck* says anything about requiring a favorable termination that excludes any suggestion of guilt. To the contrary, *Heck* – upon which *McDonough* relies and reaffirms – expressly provides that there will be no bar to suit if the plaintiff "can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512

45

### D. Daniel's Criminal Proceeding Terminated in his Favor

#### 1. Daniel's Fabricated-Evidence Claim Arises Under the Due Process Clause

Relying on *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), the *Daniel* defendants argue that, even if a termination indicative of innocence is not required under *McDonough*, Daniel's claim – which involves a pretrial deprivation of liberty – is governed by the Fourth Amendment and therefore collapses into a malicious-prosecution claim. According to the *Daniel* defendants, this means that Daniel must demonstrate that his underlying criminal case was resolved in a manner indicative of innocence as is required for malicious-prosecution claims.

The *Daniel* defendants essentially assert that, in *Manuel*, the Supreme Court categorically precluded due process fabricated-evidence claims seeking damages

---

U.S. at 487. This rule may be satisfied where "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* These resolutions do not inquire into the plaintiff's guilt. Indeed, a plaintiff's conviction may be overturned on direct appeal, expunged by virtue of a pardon, or called into question by a federal court's issuance of a writ of habeas corpus due to constitutional violations or evidentiary errors despite evidence indicative of the plaintiff's guilt. *McDonough*, like *Heck*, is not concerned with the guilt or innocence of the plaintiff; rather, *McDonough*'s favorable-termination requirement is intended to prevent parallel proceedings and inconsistent civil and criminal judgments that result when there is a pending prosecution or outstanding conviction. Neither is present here.

for pretrial detention. They argue that the Supreme Court held that such claims may only be brought under the Fourth Amendment and that, as a result, a fabricated-evidence claim seeking damages for pretrial detention is subsumed under the elements of a malicious-prosecution claim. But in *Manuel*, the Supreme Court granted certiorari to decide only whether a section 1983 claim based on a "pretrial detention following the start of legal process" could "give rise to a Fourth Amendment claim." *Manuel*, 137 S. Ct. at 916-17. The Court answered this question in the affirmative. *Id.* at 917-18 ("[T]hose objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when . . . that deprivation occurs after legal process commences.").

We have held that *Manuel* did not rule out the possibility that, in such circumstances, the Constitution also permits a due process claim that the plaintiff was deprived of life, liberty, or property as a result of the use of fabricated evidence. In *Frost v. New York City Police Department*, 980 F.3d 231 (2d Cir. 2020), we concluded that the district court erred in granting the defendants' motion for summary judgment as to Frost's section 1983 fair-trial claim, which was premised on his pretrial detention. *Id.* at 237, 245-51. In reaching this conclusion, the majority rejected the dissent's argument that Frost's claim failed as a matter

47

of law because, under *Manuel*, it arose under the Fourth Amendment and there was "ample probable cause for Frost's arrest, [pretrial] detention, and prosecution." *See id.* at 249; *id.* at 258-63 (Kearse, *J.*, dissenting). The dissent – like the *Daniel* defendants – essentially argued that Frost's fair-trial claim was more accurately described as arising under the Fourth Amendment, rather than the Due Process Clause, because the allegedly fabricated evidence was only used to initiate pretrial proceedings against Frost (and was not, in fact, introduced at trial). *See id.* The majority found this argument unpersuasive, concluding that our precedent established that, in this context, "the (perhaps imprecisely named) fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*." *Id.* at 250 (emphasis in original). Accordingly, "[n]otwithstanding the nomenclature, a criminal defendant's right to a fair trial protects more than the fairness of the trial itself[;] [i]ndeed, a criminal defendant can bring a fair trial claim even when no trial occurs at all." *Id.* at 249.

The majority in *Frost* reconciled this result with *Manuel*, explaining:

> The Supreme Court's holding in *Manuel v. City of Joliet* . . . does not compel a different result. In *Manuel*, the Supreme Court held that a § 1983 plaintiff

could challenge his pretrial detention based on purportedly fabricated evidence under the Fourth Amendment, even after a judge determined that this evidence constituted probable cause. But just as a Fourth Amendment claim survives the initiation of "legal process," our precedents establish that a fair trial claim under the Due Process Clause may accrue before the trial itself. Accordingly, the holding of *Manuel* does not preclude Frost's fair trial claim.

*Id.* at 251 n.14 (internal citations omitted).

The defendants' argument is therefore foreclosed by *Frost.* Under our precedent, Daniel may assert a fabricated-evidence claim related to his pretrial detention under the Due Process Clause.

### 2. *Daniel's ACD Constitutes a Favorable Termination Under McDonough*

In *McDonough*, the Court declined to provide further guidance concerning "the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused" because the plaintiff's acquittal there "was unquestionably a favorable termination[.]" *McDonough*, 139 S. Ct. at 2160 n.10. While the Court suggested that a "context-specific and more capacious understanding of what constitutes 'favorable' termination" might be appropriate to take account of prosecutors' broad discretion over "the terms on which pleas will be offered or whether charges will be dropped," it did not enumerate the types of terminations that would be sufficient to trigger *McDonough*'s accrual

49

rule. *Id.* It is therefore an open question as to whether the dismissal of Daniel's charges pursuant to an ACD constitutes a favorable termination for purposes of *McDonough*.

The pragmatic concerns animating *McDonough* counsel in favor of concluding that it does. As explained above, *McDonough* extended *Heck* to section 1983 fabricated-evidence claims filed during an ongoing prosecution because allowing such suits would impugn the basis for a pending prosecution and "impermissibly risk parallel litigation and conflicting judgments." *Id.* at 2160. These concerns are not implicated where, as here, the charges against the plaintiff are dismissed pursuant to an ACD. When a defendant accepts an ACD in New York state court, his criminal prosecution is "adjourn[ed] . . . without [a] date ordered" for it to resume. N.Y. Crim. Proc. Law § 170.55(2). While the government retains the right to move to "restore the case to the calendar," it must make such a motion within "six months" – or in some cases "one year" – after the defendant accepts the ACD. *Id.* If the government does not move within the prescribed time period, "the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice" and "the arrest and prosecution shall be deemed a nullity." *Id.* § 170.55(2), (8). In

50

such circumstances, there is no risk of parallel litigation because the charges have been dismissed. Nor is there any risk of conflicting judgments because no determination of guilt or innocence was made, and no judgment was entered. Rather, once the charges against Daniel were dismissed, any concerns about the possibility of "two-track litigation" dissipated. *See McDonough*, 139 S. Ct. at 2158; *see also Simon*, 2020 WL 1323114, at *6 ("A jury verdict that Cruz violated Plaintiff's due process right to a fair trial by falsifying evidence would not conflict with or challenge the validity of the dismissal of charges against Plaintiff in the interest of justice.").

This conclusion is reinforced by the rationales underlying our enduring distinction between malicious-prosecution and fair-trial claims. While a termination indicative of innocence is necessary in the context of malicious-prosecution claims to ensure that there were no reasonable grounds for the prosecution, *see Lanning*, 908 F.3d at 28, depriving an individual of life, liberty, or property by fabricating evidence violates due process regardless of whether there was probable cause because "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." *Ricciuti*, 124 F.3d at

51

130.  In contrast to a malicious-prosecution claim, which focuses on the validity of the initiation of the prosecution, a section 1983 fair-trial claim predicated on fabricated evidence guards against the deprivation of life, liberty, or property as a result of the corruption of due process,[11] and therefore does not require a favorable termination indicative of innocence.  *See id.* ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'").[12]

---

[11] We note that, for this reason, our precedents limit Daniel's claim to one that seeks redress for "deprivation[s] of life, liberty, or property" that occurred "as a result" of an investigating official's "forward[ing fabricated] information to prosecutors."  *Garnett*, 838 F.3d at 279.  While Daniel's complaint recounts an abusive detention immediately following his arrest – and alleges that the *Daniel* defendants fabricated the allegation that he had a butterfly knife – it is unclear whether the complaint alleges a deprivation of life, liberty, or property resulting from the defendants' decision to "forward" that fabricated "information to prosecutors."  *Id.*  Because the parties agree, for purposes of this appeal, that Daniel has adequately alleged that he was deprived of liberty as a result of the use of fabricated evidence, Transcript of Oral Argument at 7:12-8:8, 10:13-11:3, *Daniel v. Taylor et al.*, (No. 20-1331-cv), we leave it to the district court on remand to determine, if necessary, whether Daniel has adequately alleged the requisite elements of a fabricated-evidence claim.

[12] The *Daniel* defendants suggest that these rationales are inapplicable to Daniel's claim because he challenges the use of fabricated evidence in pretrial proceedings instead of at trial and his is therefore not "a true 'fair trial' claim."  *See Daniel* Defs. Br. at 20-21.  But, as noted above, we have held that a plaintiff may bring a section 1983 fair-trial claim challenging the use of fabricated evidence during pretrial proceedings even where no trial occurs.  *Frost*, 980 F.3d at 249-50.  Moreover, the constitutional tort's objectives of ensuring that a criminal defendant receives due process and deterring

Consistent with this distinction, it is well-settled that acceptance of an ACD bars a malicious-prosecution claim because it leaves the question of innocence or guilt unanswered and is thus not a termination indicative of innocence. *See Rothstein*, 373 F.3d at 286-87; *Singleton*, 632 F.2d at 193-94. And it was similarly well-accepted, prior to *McDonough*, that an ACD did not preclude a fair-trial claim. *See Apostol v. City of New York*, No. 11 Civ. 3851 (RRM) (CLP), 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014) (acceptance of an adjournment in contemplation of dismissal "does not preclude a fair trial claim" (collecting cases)), *aff'd*, 607 F. App'x 105 (2d Cir. 2015) (summary order). *McDonough* did not impose malicious prosecution's favorable-termination requirement onto fair trial claims or overrule our precedent concerning the contours of fabricated-evidence claims. *See McDonough*, 139 S. Ct. at 2155. Rather, as explained above, *McDonough* simply extended *Heck's* favorable termination requirement to ongoing prosecutions under circumstances that implicate *Heck's* pragmatic

---

fabrication of evidence are just as equally served by lawsuits challenging the use of fabricated evidence as a basis to initiate and sustain a prosecution (even where that case does not ultimately go to trial) as they are by lawsuits challenging the introduction of fabricated evidence to secure a conviction. *See id.* (due process clause protects against deprivation of life, liberty, or property resulting from use of fabricated evidence both pre-trial and during trial).

53

concerns for finality and consistency. Such concerns are not present where, as here, the charges against Daniel were dismissed pursuant to an ACD.

The *Daniel* defendants' arguments to the contrary are unavailing. They first assert that allowing Daniel's fabricated-evidence claim to proceed would be inconsistent with *McDonough* because Daniel's "claim that his prosecution was entirely the result of fabricated evidence necessarily impugns that prosecution." *Daniel* Defs. Br. at 23. But, by that logic, the plaintiff in *McDonough* – who contended that his indictment, prosecution, and trial were the result of fabricated evidence – also necessarily impugned the prosecution and therefore should have been barred from bringing suit. Yet the Supreme Court allowed his claim to proceed. Indeed, interpreting *McDonough* to bar a section 1983 claim wherever the claim challenges the integrity of any underlying criminal proceeding would gut the force and effect of section 1983, because section 1983 claims asserting a violation of the Fifth Amendment necessarily involve such challenges. Such a result would be inconsistent with *McDonough*, the broad remedial purpose of section 1983, and our understanding of *Heck* and related cases as a narrow "exception from § 1983's otherwise broad scope[.]" *See McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) (internal quotation marks omitted). *McDonough* was

concerned with allowing section 1983 lawsuits that would impugn an *ongoing* prosecution or *outstanding* conviction. There is no ongoing prosecution or outstanding conviction here. To the contrary, Daniel's "arrest and prosecution [have] be[en] deemed a nullity." N.Y. Crim. Proc. Law § 170.55(8).

The *Daniel* defendants also argue that there are strong practical reasons to require a plaintiff alleging fabrication of evidence to demonstrate that the underlying criminal prosecution ended in a manner indicative of innocence. According to the *Daniel* defendants, adopting a contrary rule would disincentivize prosecutors from offering ACDs in order to foreclose section 1983 lawsuits. We are not convinced. District courts in this circuit have previously held that an ACD does not bar a section 1983 fair-trial claim and such negative ramifications have, as far as we are aware, yet to occur. Moreover, it is not the job of prosecutors to insulate the City of New York from liability. Their obligation is to seek justice and to "take precautions to avoid convicting innocent individuals." *Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010). We will not presume that prosecutors will violate these ethical and professional obligations simply to assist the City in avoiding civil liability. *See Cowles v. Brownell*, 73 N.Y.2d 382, 386 (N.Y. 1989) ("Insulation from civil liability is not the duty of the

prosecutor. The prosecutor's obligation is to represent the People and to that end, to exercise independent judgment in deciding to prosecute or refrain from prosecution. This obligation cannot be fulfilled when the prosecutor undertakes also to represent a police officer for reasons divorced from any criminal justice concern."); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("[W]hile [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

For all these reasons, we conclude that a defendant's fair-trial claim accrues (and may be brought) once her charges are conclusively dismissed pursuant to an ACD. The dismissal of Daniel's charges pursuant to an ACD therefore constituted a favorable termination within the meaning of *McDonough* and *McDonough* poses no bar to suit.

## III. Daniel's Section 1981 Claims

Daniel also argues that he should be permitted to bring claims under section 1981 because there is nothing in section 1981 that, as a textual matter, precludes such a claim, particularly where the plaintiff is alleging race

discrimination.  Daniel acknowledges that we rejected this argument only three years ago in *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018), but argues that *Duplan* should be reconsidered because (1) *Duplan* "does not comport with the Supreme Court's approach in reading statutes textually rather than through the lens of Congressional intent"; and (2) *Duplan* "is caught in a circuit split."  *Daniel* Pl. Br. at 36-39.  These arguments are without merit.

In *Duplan*, we expressly held that "42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981."  *Duplan*, 888 F.3d at 616.  In reaching this conclusion, we acknowledged the Ninth Circuit's contrary holding in *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996) – upon which Daniel relies in his brief – but found it unpersuasive.  *See Duplan*, 888 F.3d at 620.  Indeed, "[e]very subsequent Circuit to consider the issue . . . has declined to follow *Federation's* reasoning."  *Id.* at 620 & n.2.  Moreover, as we explained, the Supreme Court – in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) – "held that 'the express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units.'"  *Duplan*, 888 F.3d at 619 (emphasis in original) (quoting *Jett*, 491 U.S. at 733).

57

Although Congress amended section 1981 after *Jett* was issued, the legislative history underlying the amendment made no reference to *Jett* while it expressly overruled other Supreme Court cases.  This suggests that the amendment was not intended to overrule *Jett*.  *Id.* at 620.  In addition, "[b]ecause § 1983 already provides a remedy against state actors, there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy."  *Id.* at 620-21.  Lastly, we noted that "since *Federation* was decided, the Supreme Court has increasingly discouraged the recognition of implied rights of actions without a clear indication of congressional intent."  *Id.* at 621.  We therefore joined nine other Circuits "in concluding that § 1981 does not provide a separate private right of action against state actors."  *Id.*

"[G]enerally a decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court," or there is "an intervening Supreme Court decision . . . [that] casts doubt on our controlling precedent[.]"  *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (internal quotation marks omitted); *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019).  This Court's decision in *Duplan* has not been overruled, and Daniel points to no intervening decision that casts doubt on its holding.  Daniel has provided no

legitimate basis for revisiting this Court's binding precedent in *Duplan*.  We

therefore affirm the district court's dismissal of Daniel's section 1981 claims.

## IV.    Daniel's Motion for Equitable Tolling

"'Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way.'"  *Watson v. United*

*States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794

F.3d 347, 352 (2d Cir. 2015)).  "The term 'extraordinary' refers not to the

uniqueness of a party's circumstances, but rather to the severity of the obstacle

impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132,

137 (2d Cir. 2011).  Moreover, "[t]o secure equitable tolling, it is not enough for a

party to show that he experienced extraordinary circumstances[;] [h]e must

further demonstrate that those circumstances caused him to miss the original

filing deadline."  *Id.*  In addition, even if a party demonstrates a causal

relationship between the extraordinary circumstances and the lateness of his

filing, the party seeking equitable tolling is "required to show reasonable

diligence in pursuing his claim throughout the period he seeks to have tolled."

*Id.* at 134.  This showing cannot be made if the party, "acting with reasonable

59

diligence, could have filed on time notwithstanding" the extraordinary circumstances. *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010). We review the district court's equitable tolling ruling for abuse of discretion. *Watson*, 865 F.3d at 131.

Daniel argues that the district abused its discretion in denying his motion for equitable tolling because extraordinary circumstances prevented him from filing his section 1983 claims. As evidence of diligence and extraordinary circumstances, Daniel points out that (1) he filed a charge with the Internal Affairs Board, but never heard back from them; (2) an attorney agreed to represent him but never filed an action, ignored and did not return his repeated phone calls, and refused to turn over the case file to him; and (3) he had a hand injury, which allegedly made it difficult for him to find an attorney through Internet searches or by phone. These arguments are unpersuasive.

Even assuming the conduct of Daniel's initial attorney rose to the level of extraordinary circumstances,[13] it did not cause Daniel to miss the filing deadline.

---

[13] "[A]ttorney error normally will not constitute the extraordinary circumstances required to toll the . . . limitations period . . . [but] at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (emphasis omitted). While "ordinary" attorney mistakes concerning, for example, the deadlines for filing suit do not constitute extraordinary circumstances, *id.*, an attorney "who willfully ignore[s] the express

"A court may conclude that such causation is lacking where the identified extraordinary circumstances arose and concluded early within the limitations period." *Harper*, 648 F.3d at 137. Here, as the district court noted, the attorney notified Daniel in November 2017 – nearly five months before the close of the limitations period on March 18, 2018 – that she was not representing him. During this five-month period, we think that a reasonably diligent person could have retained an attorney and filed suit.

Daniel also cannot establish that he demonstrated reasonable diligence throughout the period that he seeks to toll. First, as the district court noted, the IAB's failure to provide Daniel with the results of its investigation did not "prevent[] [him] from timely filing a complaint in federal court." *Daniels*, 2019 WL 1437586, at *6. Daniel's "failure to follow up with the IAB, or to otherwise pursue his claims in the absence of learning the results of the investigation, supports the conclusion that he did not pursue his claims with reasonable diligence through the limitations period." *Id.* Indeed, Daniel did not retain counsel until around December 2015 – nine months after his arrest – when he got

---

instructions of his client, d[oes] not conduct any legal research on his client's behalf, and never sp[eaks] to or me[ets] with his client" or who fails to file a habeas petition on behalf of a petitioner, "despite explicit directions from the prisoner to do so," constitutes extraordinary circumstances. *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011).

61

into a car accident and met a paralegal at the scene who introduced him to his initial attorney. Daniel JA.85 ¶ 2. Moreover, as previously noted, "once Daniel affirmatively learned that [the attorney] was not representing him, he still had five months before the close of the limitations period to file a complaint[.]" *Daniels*, 2019 WL 1437586, at *6.

Daniel's reliance on his hand injury to explain this delay is unpersuasive. As the district court explained, while Daniel had a hand injury "that made it difficult for him to type or make phone calls," "[a] person acting with reasonable diligence under such circumstances would have . . . found a way to pursue his claims – perhaps with the help of a friend or family member, or through the use of his other hand." *Id.*

Accordingly, the district court did not abuse its discretion in denying Daniel's motion for equitable tolling.

## CONCLUSION

We have considered the parties' remaining arguments on appeal and conclude that they are without merit. We therefore REVERSE the district courts' judgments with respect to the fair-trial claims, AFFIRM the dismissal of Daniel's

other claims, and REMAND each case for further proceedings consistent with

this opinion.